JOINER, Judge.[1]
Donnis George Musgrove, an inmate on death row at Holman Correctional Facility, appeals the Jefferson Circuit Court’s denial of his petition for postconviction relief filed pursuant to Rule 32, Ala. R.Crim. P.
In February 1988, Musgrove and Walter Rogers were convicted of intentional murder made capital because it was committed during a burglary, see § 13A-5-40(a)(4), Ala.Code 1975. At their request, Mus-grove’s and Rogers’s cases were consolidated for trial. The jury, by a vote of 10 to 2, recommended that Musgrove and Rogers be sentenced to death. The circuit court followed the jury’s recommendation and sentenced Musgrove and Rogers to death.
On direct appeal, this Court reversed Musgrove’s and Rogers’s convictions and death sentences. See Rogers v. State, 630 So.2d 78 (Ala.Crim.App.1991), rev’d 630 So.2d 88. The Alabama Supreme Court, however, reversed this Court’s judgment. Ex parte Rogers, 630 So.2d 88 (Ala.1992). On remand from the Alabama Supreme Court, this Court affirmed the convictions and sentences of death. Musgrove v. State, 638 So.2d 1347 (Ala.Crim.App.1993). The Alabama Supreme Court then affirmed. Ex parte Musgrove, 638 So.2d 1360 (Ala.1994), cert, denied, 513 U.S. 845, 115 S.Ct. 136, 130 L.Ed.2d 78 (1994). This Court issued the certificate of judgment, making Musgrove’s direct appeal final, on March 24,1994.
On November 17,1995, Musgrove filed a petition for postconviction relief pursuant to Rule 32, Ala. R.Crim. P. (C. 189.) The State filed an answer to the petition on December 19, 1995. (C. 2.) On March 10, 1997, Musgrove filed his first amended *416 Rule 32 petition. (C. 803.) The State, on March 5, 1999, filed an answer to the amended petition. (C. 428.)
On March 18, 2005, Musgrove filed his second amended Rule 32 petition. (C. 937.) On September 1, 2004, the State filed an answer and moved to dismiss Mus-grove’s second amended Rule 32 petition.[2] On May 8-10, 2006, an evidentiary hearing was held before Judge James Garrett, who had presided at Musgrove’s trial. In a written order entered on April 15, 2008, Judge Garrett denied Musgrove’s second amended Rule 32 petition. (C. 984.) Mus-grove appealed to this Court. See Rule 32.10, Ala. R.Crim. P.
In the order denying Musgrove’s second amended Rule 32 petition, Judge Garrett adopted the following findings from his original sentencing order:
“The victim in this case, Coy Eugene Barron, and his wife Libby Barron were asleep in their home in the community of Robinwood which is located on the outskirts of Birmingham in Jefferson County, during the early morning hours of Saturday, September 28, 1986. They were awakened as the front door of their home was apparently kicked in and as the door was being kicked in the victim and his wife were aroused from the bed, wherein the victim went to the bedroom door and tried to hold the door closed as one or more individuals were pushing on the bedroom door trying to gain entrance to the bedroom. The victim’s wife was standing immediately behind him as he attempted to hold the bedroom door while she held their small baby who had been sleeping in their bed. The victim was advised by one of the individuals to get away from the door and not to run or he would shoot. Immediately thereafter entrance was gained to the bedroom by the individuals by forcing the door open, whereupon the victim ran to the other side of the room and picked up a bottle as if to throw at the two individuals who had broken into the bedroom. At that time two shots were fired, one by each of the individuals at the door, one of the two bullets striking the victim in the neck and thereby killing him. One of the individuals later determined to be the Defendant, David Walter Rogers, immediately left and ran out the front door, the second individual later identified as the defendant, Donnis George Musgrove, turned and pointed his pistol at the victim’s wife who was still holding their small child. After a brief face to face encounter the defendant, Donnis George Musgrove turned and ran out the front door. This entire scenario was observed by another individual apparently unbeknownst to the two intruders, a seventeen year old boy named Jamie Crawford who had been staying with the victim and his wife for a couple of weeks prior to the incident. Immediately after the two defendants ran from the house the victim’s wife and the young male, Jamie Crawford, ran from the house and saw a ear speeding away from the scene.
“An investigation immediately ensued by the Jefferson County Sheriffs Department concerning the incident and in late November an Alabama State Trooper became involved in a high speed chase in Morgan County, Alabama, of a Chevrolet Camaro which later was determined to be stolen. This high speed chase extended for approximately twenty miles at speeds in excess of 120 mph. *417 At the conclusion of the chase the stolen Chevrolet Camaro wrecked and the two individuals occupying the car fled from the scene and were later apprehended by a Cullman County Deputy Sheriff. On arrest of the two individuals it was determined later that their identity was Donnis George Musgrove and David Walter Rogers. These two individuals were subsequently placed in two separate lineups which were viewed by the victim’s wife and she was able to identify each of the individuals as those individuals that came into her house that night and murdered her husband.
“It was further determined from the evidence that in July of 1986 the defendant, Donnis George Musgrove, was involved in an altercation in Tarrant City, Alabama, whereby he allegedly assaulted a man on Ketona Street and struck him in the side of the head with a pistol at which time the pistol discharged. The man was otherwise injured but was not injured as a result of the gunshot wound. He did however make a report to the Tarrant City Police Department of the incident and later investigation by the Jefferson County Sheriffs Detective in charge of the investigation of this case, made a search of the scene where the assault occurred and was able to locate a shell casing. This shell casing was compared with a shell casing found next to the victim Coy Barron and a comparison was made by the Alabama Department of Forensic Sciences. It was determined by comparison that both shells had been fired from the same pistol thus placing one of the weapons that was fired in the home of the victim in the hands of Donnis George Mus-grove in July of 1986.
“The defendant presented a case of alibi as a defense of the charges in the indictment. Several witnesses were presented who testified that the defendants were not in Birmingham at the time at which the murder occurred but were in Bradenton, Florida, visiting in the home of a Ms. Ollie Blunt and were there between the periods of August 28 and October 6, 1986. Documented evidence in the form of phone bills was presented to support the alibi of the defendant Donnis George Musgrove in his alibi defense, tending to show that he had made telephone calls from this address in Florida on the date of the offense. The alibi testimony by each of the code-fendants was that they were in the company of each other during this entire term from August 28 until October 6, when they returned to the Birmingham area.
“The State on rebuttal presented evidence which showed that at the time of the arrest after the high speed chase in Morgan County, Alabama, that the code-fendant, David Walter Rogers, had on his person identification belonging to Terry Dockery from Smyrna, Georgia, and that this identification was contained in an automobile stolen from his apartment on September 28, 1986, said date being within the time frame of the alibi previously presented by each of the codefendants.”
(Trial C. 2805-2808; C. 38^1.[3])

Standard of Review

Musgrove appeals the circuit court’s denial of his petition for postconviction relief filed pursuant to Rule 32, Ala. R.Crim. *418 P. — a proceeding Musgrove initiated to challenge his conviction and death sentence. Musgrove has the burden of pleading and proving his claims. Rule 32.3, Ala. R.Crim. P., provides:
“The petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief. The state shall have the burden of pleading any ground of preclusion, but once a ground of preclusion has been pleaded, the petitioner shall have the burden of disproving its existence by a preponderance of the evidence.”
“The standard of review this Court uses in evaluating the rulings made by the trial court [in a postconviction proceeding] is whether the trial court abused its discretion.” Hunt v. State, 940 So.2d 1041,1049 (Ala.Crim.App.2005).
“We will reverse a circuit court’s findings only if they are ‘clearly erroneous.’ Barbour v. State, 903 So.2d 858, 861 (Ala.Crim.App.2004).
“ ‘ “ ‘[A] finding is “clearly erroneous” when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.’ United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948) .... If the district court’s account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be clearly erroneous. United States v. Yellow Cab Co., 338 U.S. 338, 342, 70 S.Ct. 177, 179, 94 L.Ed. 150 (1949); see also Inwood Laboratories, Inc. v. Ives Laboratories, Inc., 456 U.S. 844, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982).” [Anderson v. City of Bessemer City, N.C.], 470 U.S. [564] at 573-74, 105 S.Ct. [1504] at 1511 [(1985)].’
“Morrison v. State, 551 So.2d 435, 436-37 (Ala.Crim.App.1989); see also Barbour v. State, 903 So.2d at 862.”
Jackson v. State, 963 So.2d 150, 154-55 (Ala.Crim.App.2006). See also Boyd v. State, 913 So.2d 1113, 1122 (Ala.Crim.App. 2003) (“[W]here there are disputed facts in a postconviction proceeding and the circuit court resolves those disputed facts, ‘[t]he standard of review on appeal ... is whether the trial judge abused his discretion when he denied the petition.’ ” (quoting Elliott v. State, 601 So.2d 1118, 1119 (Ala. Crim.App.1992))). However, “when the facts are undisputed and an appellate court is presented with pure questions of law, [our] review in a Rule 32 proceeding is de novo.” Ex parte White, 792 So.2d 1097, 1098 (AIa.2001). “[W]e may affirm a circuit court’s ruling on a postconviction petition if it is correct for any reason.” Smith v. State, 122 So.3d 224, 227 (Ala. Crim.App.2011).
“[T]he procedural bars of Rule 32[.2, Ala. R.Crim. P.,] apply with equal force to all cases, including those in which the death penalty has been imposed.” Burgess v. State, 962 So.2d 272, 277 (Ala. Crim.App.2005). Moreover, “[although on direct appeal we reviewed [Musgrove’s] capital-murder conviction for plain error, the plain-error standard of review does not apply when an appellate court is reviewing the denial of a postconviction petition attacking a death sentence.” James v. State, 61 So.3d 357, 362 (Ala.Crim.App. 2010) (citing Ex parte Dobyne, 805 So.2d 763 (Ala.2001)).

*419
Discussion

I.
Musgrove alleges that newly discovered evidence “demonstrates that [he] was denied a fair trial and is innocent.” (Mus-grove’s brief, p. 13.)
“In Boyd v. State, 746 So.2d 364 (Ala. Crim.App.1999), this Court explained the standard applicable to claims of newly discovered evidence:
“‘Under Rule 32.1, Ala. R.Crim. P., subject to the preclusions in Rule 32.2, a remedy is afforded a defendant when the grounds supporting the requested relief are based on newly discovered facts (1) that were not known by petitioner or petitioner’s counsel at the time of trial or sentencing or in time to file a post-trial motion pursuant to Rule 24, [Ala. R.Crim. P.,] or in time to be included in any previous collateral proceeding and could not have been discovered by any of those times through the exercise of reasonable diligence; (2) that were not merely cumulative to other facts that were known; (3) that were not merely amounting to impeachment evidence; (4) that if they had been known at the time of trial or of sentencing, the result probably would have been different; and (5) that establish that petitioner is innocent of the crime for which petitioner was convicted or should not have received the sentence that petitioner received. Rule 32.1(e)(1) through (5), Ala. R.Crim. P. Rule 32.3 places the burden on the defendant to plead and prove facts necessary to obtain relief. Rule 32.6(b) requires that the petition itself disclose the facts relied upon in seeking relief. Rule 32.6(b), Ala. R.Crim. P. When this is done, the burden shifts to the state to plead preclusion-ary grounds meriting summary dismissal. Rule 32.3[, Ala. R.Crim. PJ. The burden then shifts to the petitioner to disprove a preclusionary ground plead[ed] by the state.’
“746 So.2d at 405-06 (footnotes omitted). Before the allegations in [a] Rule 32 petition can be considered to be based on newly discovered evidence, they must meet all five requirements of Rule 32.1(e). See Tarver v. State, 769 So.2d 338, 340-41 (Ala.Crim.App.2000) (‘We have repeatedly stated that before a claim may be considered as newly discovered evidence the claim must meet the definition of newly discovered evidence found in Rule 32.1(e).’).”
McCartha v. State, 78 So.3d 1014, 1017 (Ala.Crim.App.2011).
A.
In Part I.A. of his brief, Musgrove provides an overview of his claims based on alleged newly discovered evidence, and he cites to various general propositions of law. We address each claim in the appropriate section below.
B.
In Part I.B. of his brief, Musgrove focuses on the circuit court’s decision not to permit Billy Don Springer to testify at the evidentiary hearing. At the consolidated trial of Musgrove and Rogers, Springer testified that he had been incarcerated with Rogers and that Rogers had confessed to participating in the murder of Barron. In his direct appeal, Mus-grove challenged, among other things, (1) the consolidation of his case with Rogers’s case for trial and sentencing, (2) the admission of Springer’s testimony regarding Rogers’s confession, and (3) a statement the prosecutor made during his closing argument regarding Rogers’s confession.
In Rogers, this Court rejected Mus-grove’s challenge to the consolidation of *420 his and Rogers’s cases. In doing so, this Court stated:
“In the present case, both of the appellants moved the court to have their cases consolidated for trial. The following transpired prior to trial:
“ ‘THE COURT: This is a joint motion to consolidate filed by both defendants, Rogers and Musgrove, by the attorneys for the defendants, Rogers and Musgrove, setting out the grounds which are sufficient for consolidation. I have checked the statute under the consolidation statute and it does not differentiate between capital and non-capital cases so apparently consolidation is a matter that can be considered for a capital case as well as a non-capital case because there was no prohibition from it in the rule.
“ ‘Is that the wish of the two attorneys, that this — these two cases be consolidated for trial?
“ ‘[MUSGROVE’S ATTORNEY]: Yes, sir.
“ ‘[ROGERS’S ATTORNEY]: Yes, sir; it is.
“ ‘[MUSGROVE’S ATTORNEY]: On behalf of Mr. Musgrove it is.
“ ‘THE COURT: All right now, Mr. Musgrove, I’ll ask you, you have seen or you have discussed with your attorney ... concerning this consolidation motion. Is that what you wish to do in this matter, [to] consolidate these two cases for trial?
“ ‘DEFENDANT MUSGROVE: Yes, sir.
“ ‘THE COURT: Now, you understand that — and I don’t know all the evidence, I understand that there are statements — statements could be admitted if another statement was made by someone which might be hearsay if you were tried separately, it might be admissible, but, of course, I will give instructions to the jury as to how it should be considered if that does occur. Do you understand that?
“ ‘DEFENDANT MUSGROVE: Yes, sir.
“ ‘THE COURT: All right, do you still wish to go forward with your motion to consolidate?
“ ‘DEFENDANT MUSGROVE: Yes, sir.
“‘THE COURT: All right, Mr. Rogers, I’ll ask you the same question. Do you wish to consolidate your case with the case of Mr. Musgrove for trial?
“‘DEFENDANT ROGERS: Yes, sir.
“‘THE COURT: All right. The same question I asked Mr. Musgrove, if any statement has been made that would be inadmissible because of hearsay otherwise might be admissible if these cases are consolidated with instructions to the jury as to how they will be considered. Do you understand that?
“‘DEFENDANT ROGERS: Yes, sir.
“ ‘THE COURT: All right, does the State wish to be heard on the consolidation motion?
“ ‘[PROSECUTOR]: Yes, sir. The State does wish to be heard.
“‘THE COURT: All right, go ahead.
“‘[PROSECUTOR]: First of all, and I want to state for the record, the substance of what the statements would be and I’ll have to look at something before I proceed.
“ ‘THE COURT: I think when you figure it out, just the essence of what the statements were but not as to any *421 person that they were allegedly given to.
‘“[PROSECUTOR]: Yes, sir; I just want to make sure that these two defendants understand the State intends to produce witnesses at this trial, one being the daughter of Mr. Don-nis Musgrove. I believe her name is Tamara Sanford and her husband, Ricky Sanford,[4] who would testify in substance that on an occasion following the shooting of Coy Barron, Mr. Musgrove said to each of them, and I think he said it on separate occasions, I’ll stand corrected if the statements indicate otherwise, but he said, in substance, to each of them, that he, in fact, was there the night Coy Barron was killed, that he did have a gun, that the gun was a 9 mm., that he was there with David Rogers, that both of them shot their pistols at Coy Barron but that he, Donnis Musgrove, did not hit Coy Barron, that he did not intend to hit Coy Barron, that he was only intending to scare him and that David Rogers had a .38. We would, also, and, of course, those two statements made by the — or the testimony of those two witnesses, would be substantive evidence against Mr. Mus-grove but the mention of Mr. Rogers’ name in those statements would be hearsay because they were made by Mr. Musgrove and if Mr. Rogers were to be tried separately those statements will be inadmissible against Mr. Rogers. Further, another State’s witness, Mr. Billy Don Springer, will testify that while he was in prison with David Rogers, David Rogers had more than one conversation with him and talked with him in detail about the murder of Coy Barron. That among other things that Mr. Rogers mentioned was that, yes, he in fact was present the night Coy Barron was shot, that he was one of the two individuals who kicked his way into the bedroom, that Donnis Musgrove was the other individual present, that both of them were armed. That he, David Rogers, had the .9 mm. but that it was Donnis Musgrove that had the .38 caliber pistol and that he, David Rogers, did not intend to kill Coy Barron and I believe that he was intending to scare him. He said a number of other things that David Rogers told him including the fact that both of these witnesses intended to be his alibi witnesses from the State of Florida and/or documents from the State of Florida attesting that they were not in the state of Alabama when the crime was committed and, of course, Billy Don Springer’s testimony would not be admissible against Donnis Mus-grove if Donnis Musgrove were to be tried separately from David Rogers. It is obvious to the State, and I think to anyone, because I think the law is such, that these statements will be highly prejudicial to both defendants; however, the admission made by one defendant obviously would be admissible against him. The admissions made by another defendant would not be admissible against the first defendant. By being tried together, it’s the State’s position, first of all, that all the testimony comes in from all the three witnesses that have been named. *422 Further, that none of the testimony be redacted or stricken such that it could be confusing to the jury. In other words, the State is asking this Court if the motion is to be granted, in all fairness to the State of Alabama, even though a curative instruction should be given to the jury that they should disregard the hearsay testimony against both of the defendants, it would be absolutely unfair to the State of Alabama to somehow change those statements or redact those statements so that the jury would not hear from all three of these witnesses about the other defendant, the hearsay portion of it. In other words, we’re saying everything comes in. Judge, I want to make sure that these individuals know that as far as I know the law of the United States of America is still such that the State, if we move to have these cases joined, could not have those statements admitted into evidence without their being changed or redacted such that any reference to the other defendant in the hearsay portion be stricken for the jury. I just want to make sure that they understand that and, Judge, I’m still not certain that these two individuals can voluntarily waive their rights in that regard. I think it very well may be reversible error and I would ask the court to further inquire of these two defendants if they know what they are doing, and I know that the two defense attorneys certainly would not try to put reversible error into the record, but I don’t want to see a situation like that created where if convictions are gained against either or both of these defendants somewhere down the road they come back in front of an Appellate Court and say either we did not understand what we were doing or we received bad advice from our attorneys, that they didn’t know what they were doing. They advised us to do this. I want to make dead clear certain on the record that none of that occurs if these men are sent forth forward to the electric chair.
[[Image here]]
‘“THE COURT: ....
“ ‘Now, again, I’ll ask Mr. Mus-grove, after having heard what the prosecutor said in this case, do you wish to follow through with your motion and still ask that these cases be consolidated?
“ ‘DEFENDANT MUSGROVE: Yes, sir.
“‘THE COURT: Mr. Rogers, I’ll ask the same of you?
“‘DEFENDANT ROGERS: Yes, sir.
“ ‘THE COURT: I think there is sufficient grounds for these eases to be consolidated so I am going to consolidate these cases for trial....’
“During the course of the trial, Billy Don Springer was allowed to testify to the evidence against David Rogers, as proffered by the prosecutor. The trial court gave the jury limiting instructions that the testimony could only be considered in the case against David Rogers. Another witness was allowed to testify that when the killing occurred David Rogers was serving a sentence, as required by Count II of the indictment against him, and the trial court instructed the jury that that evidence could be considered only in the case against David Rogers. Another witness testified at trial that, over two months before the date of the present offense, the witness was at his home working on a car. He testified that Donnis Musgrove and *423 another individual drove to his house, where Donnis Musgrove struck him in the head with a gun. The witness testified that the gun went off when he was struck in the head. He testified that afterwards he filed a report with the police. The State subsequently introduced evidence that when Donnis Mus-grove came under investigation for the present offense, a police officer, accompanied by a man who was trained in the use of a metal detector, searched the yard for the bullet. The bullet was ultimately recovered and was determined to have been fired from one of the guns used in the present offense. The trial court instructed the jury that the testimony of the witness allegedly struck by Donnis Musgrove was only to be considered in the case against Donnis Mus-grove.
“ ‘If defendants are charged in separate indictments, informations, or complaints, the court, on its own initiative or on motion of any party, may no later than seven (7) days, prior to trial, order that the defendants be joined for the purposes of trial if the defendants could have been joined in a single indictment, information, or complaint. Proceedings thereafter shall be the same as if the prosecution initially had been under a single indictment, information, or complaint. However, the court shall not order the defendants be tried together without first providing the defendants and the prosecutor an opportunity to be heard.’
“Rule 15.4(b), A.[R].Crim. P. Temp. Moreover, pursuant to Rule 15.4(a), defendants may be charged in the same indictment:
“ ‘(i) if they are alleged to have participated in the same act or transaction; or
“ ‘(ii) when the several offenses are a part of a common conspiracy, scheme, or plan; or
“ ‘(iii) when the several offenses are otherwise so closely connected that it would be difficult to separate the proof of one from the proof of the other.’
“Where defendants are properly joined in the same indictment, they may be jointly tried. Rule 15.4(c), A.R.Crim. P. Temp.
“ ‘ “The trial of multiple defendants carries ‘substantial risks of manifest unfairness.’ United States v. McLau-rin, 557 F.2d 1064, 1074 (5th Cir. 1977). ‘Inherent in every joint trial is, of necessity, some degree of bias. Only in the event such prejudice appears to be compelling does severance become warranted.’ United States v. Marszalkowski, 669 F.2d 655, 660 (11th Cir.1982).
“““Although the risk of prejudice, either from the jury’s perception of evidentiary spillover or transference of guilt, exists in any joinder of offenses or defendants, the trial court weighs that risk against the interest of judicial economy. In reviewing improper denial of severance claims, courts of appeals require that the defendant demonstrate that the trial court abused its discretion by showing that the failure to sever resulted in compelling prejudice....
“ ‘ “ ‘The defendant bears a difficult burden in attempting to show that joinder of defendants or charges created substantial or compelling prejudice. The defendant fails to meet this burden if he merely asserts that acquittal is more likely if he is tried in a separate action or that much of the prosecu *424 tion’s evidence relates to only one of the codefendants. Compelling prejudice requiring severance does not result when the evidence against the codefendant is more damaging than against the defendant, or when the prosecution introduces into evidence a codefendant’s past criminal record or reputation....
“ ‘ “ ‘Severance may be required when codefendants’ inconsistent defenses are prejudicial because they are mutually exclusive and irreconcilable or might mislead or confuse the jury. The defendant may demonstrate the level of antagonism requiring severance by showing that the jury had to disbelieve testimony offered in behalf of a codefendant in order to believe the core of evidence offered by the defendant. In determining whether prejudice resulting from jury confusion requires severance, courts focus on whether the jury reasonably could be expected to “compartmentalize” the evidence and charges against each defendant. Courts also consider the effectiveness of the jury instructions, the complexity of the case, and the total weight of evidence against each defendant.’
“ ‘ “Twelfth Annual Review Of Criminal Procedure: United States Supreme Couri and Courts of Appeals 1981-1982, 71 Geo. L.J. 339, 494-98 (1983).
“ ‘ “The test of whether a severance should be granted on the ground of prejudice to the defendants is whether under all the circumstances as a practical matter it is within the capacity of the jurors to follow the court’s instructions and to collate and appraise the independent evidence against each defendant solely upon that defendant’s own acts. McLaurin, 557 F.2d at 1075. The trial judge must weigh the prejudice attendant to a joint trial against the interests of judicial economy. ‘Of necessity, this balancing process is committed in the first instance to the sound discretion of the trial judge, and an appellate court will not substitute its own judgment for that of the lower court absent an affirmative showing that the lower court has abused its discretion.’ McLaurin, 557 F.2d at 1075.” ’
“Gibson v. State, 555 So.2d 784, 795 (Ala.Cr.App.1989), quoting Holsemback v. State, 443 So.2d 1371, 1377-78 (Ala. Cr.App.1983).
“In the present case, the defendants moved to have their cases consolidated, despite the prosecutor’s statements of concern. However, they were given ample opportunity to be heard and were clearly informed of the possible repercussions. They were properly joined pursuant to Rule 15.4(a) because they were alleged to have participated in the same offense, pursuant to a common scheme.
“The appellants never moved for severance. Both appellants raised the same alibi defense, relying on the same alibi witnesses and testimony, and both effectively attacked the validity and propriety of their identifications by the victim’s wife in a pretrial lineup.
“The invited error rule has been applied equally in capital cases and non-capital cases....
“In the present case, the defendants were clearly informed of the possible repercussions of the consolidation of their cases and, with this knowledge, they decided to pursue their motion to consolidate. Thus, the appellants are estopped from asserting error on appeal, *425 because they invited the error they now complain of.”
Rogers, 630 So.2d at 80-85, rev’d on other grounds, 630 So.2d 88.
On remand from the Alabama Supreme Court after that Court reversed our judgment in Rogers on other grounds, this Court rejected Musgrove’s challenges to the admission of Springer’s testimony regarding Rogers’s confession and to a statement the prosecutor made during his closing argument regarding Rogers’s confession. This Court stated:
“Musgrove argues that the admission of Rogers’s confession at their consolidated trial requires that the judgment be reversed, because, he says, its admission violated his rights guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and by Alabama law. See Bru-ton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). However, this court has previously determined in the original opinion that, because both appellants sought to have their cases consolidated for trial, they are now estopped from complaining of any error on those grounds. This court further held that the consolidation was proper. Appellant Musgrove was advised that Rogers’s statement would be used as evidence at trial. The prosecutor even advised Musgrove that the testimony concerning Rogers’s statement would not be admissible against him in a separate trial.
“In the present case, no objection was made at trial on these grounds and, therefore, this alleged violation of Bru-ton would have to rise to the level of plain error, pursuant to Rule 45A, A.R.App. P. ‘Plain error only arises if the error is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings.’ Ex parte Womack, 435 So.2d 766, 769 (Ala.), cert, denied, 464 U.S. 986,104 S.Ct. 436, 78 L.Ed.2d 367 (1983). This alleged error did not rise to the level of plain error. Not only did the appellant invite any error on this ground by agreeing to the consolidation, Timmons v. State, 487 So.2d 975 (Ala.Cr.App. 1986), but also the record indicates that the trial court instructed the jury, on more than one occasion, that only that evidence admitted against appellant Musgrove could be considered in the determination of his guilt or innocence. The court further specifically instructed the jury that Rogers’s confession could not be considered against Musgrove.
“Furthermore, although Musgrove complains that the prosecutor’s statement during his closing argument concerning this confession was prejudicial error, the record indicates that this remark was made during rebuttal closing argument and was based on the evidence presented at trial. Therefore, there was no error. Evans v. State, 389 So.2d 567, 572 (Ala.Cr.App.1980), overruled on other grounds, Frazier v. City of Montgomery, 565 So.2d 1255 (Ala.Cr. App.1990).”
Musgrove, 638 So.2d at 1349.
According to Musgrove in the present appeal, if Springer had been allowed to testify at the evidentiary hearing on Mus-grove’s Rule 32 petition, Springer would have recanted the testimony he gave at trial and would have testified that his trial testimony was the result of misconduct by the prosecutor and law enforcement.[5] (Musgrove’s brief, Part I.B.I., pp. 19-23.) Further, Musgrove argues that Springer’s *426 trial testimony was crucial to the State’s case against Musgrove (Musgrove’s brief, Part I.B.2., pp. 24-30); he asserts: “Springer attested falsely [at trial] to Mr. Musgrove’s and Mr. Rogers’s involvement in the murder of Coy Barron as well as to their joint alibi. Such testimony was the linchpin of the prosecutor’s case against Mr. Musgrove.... ” (Musgrove’s brief, p. 19.)
In rejecting Musgrove’s claim based on Springer’s alleged willingness to recant his testimony from Musgrove’s trial, the circuit court noted that Springer’s trial testimony had been offered by the State against Rogers, not Musgrove, and that the trial court had specifically instructed the jury that Springer’s testimony could not be used as evidence against Mus-grove. Further, the circuit court cited this Court’s holding in Musgrove to that same effect, ie., that Springer’s testimony was offered against Rogers only and that the jury was instructed to consider that testimony against Rogers and not Musgrove. As to Musgrove’s Rule 32 claim that Springfield had recanted his trial testimony, the circuit court concluded that the claim was “neither material nor relevant to any postconviction claim raised by Mus-grove.” [6] (C. 54.)
We agree with the circuit court. Although Musgrove attempts to bolster this claim by attacking the sufficiency of the limiting instruction the trial court gave the jury regarding Springer’s testimony, this Court decided that issue adversely to Musgrove in his direct appeal; thus, Mus-grove’s attempt to challenge the limiting instruction in his postconviction petition is procedurally barred under Rule 32.2(a)(4), Ala. R.Crim. P., because it “was raised [and] addressed on appeal.” Cf Jackson v. State, 133 So.3d 420, 443 (AIa.Crim.App. 2009) (opinion on return to remand) (“This claim was specifically addressed on direct appeal; therefore, it is procedurally barred in this postconviction proceeding. See Rule 32.2(a)(4), Ala. R.Crim. P.”).
Similarly, as noted above, this Court on direct appeal rejected Mus-grove’s argument that the prosecutor’s comment during closing argument in the guilt phase was “prejudicial error.” Thus, to the extent Musgrove challenges the prosecutor’s comment, he is procedurally barred from doing so. Jackson, supra; Rule 32.2(a)(4), Ala. R.Crim. P.
Finally, as noted above, this Court on direct appeal held that any error in the consolidation of Musgrove’s and Rogers’s cases for trial was invited error. As the above-quoted exchange between the trial judge, prosecutor, defense counsel, Mus-grove, and Rogers demonstrates, the ramifications of Musgrove’s decision to consolidate his case with Rogers’s case were fully explained to Musgrove and to his trial counsel.[7] Thus, even if at the Rule 32 hearing Musgrove had proved that the *427 jury improperly used Springer’s testimony against Musgrove — which Musgrove did' not prove — it would not change this Court’s holding that Musgrove’s decision to consolidate his case with Rogers’s for trial was responsible for any improper use of Springer’s testimony against Musgrove. Accordingly, we cannot say the circuit court abused its discretion in holding that Springer’s proffered recantation of his trial testimony was irrelevant and not material to Musgrove’s case. See Ex parte Log-gins, 771 So.2d 1093,1103 (Ala.2000) (“The question of admissibility of evidence is generally left to the discretion of the trial court, and the trial court’s determination on that question will not be reversed except upon a clear showing of abuse of discretion....”).
Musgrove cites McMillian v. State, 616 So.2d 933 (Ala.Crim.App.1993), in which an accomplice five months after trial recanted his trial testimony against McMillian, whose appeal was still pending. McMilli-an is distinguishable. The accomplice who testified against McMillian was the prosecution’s “key witness” against McMillian and “[wjithout [the accomplice’s] testimony, the state could not have obtained a conviction.” 616 So.2d at 937. In Mus-grove’s case, however, Springer’s testimony was not offered or admitted against Musgrove. The evidence supporting Mus-grove’s conviction consisted of evidence independent of Springer’s testimony — such as the shell-casing evidence, Libby Barron’s identification of Musgrove, the evidence of flight, and the impeachment of Musgrove’s alibi.
Musgrove also proffered certain exhibits in an attempt to bolster the credibility of Springer’s recantation. Specifically, Musgrove proffered the following: (1) a copy of a conviction in Kentucky purportedly related to Springer under the alias William Prince; (2) a June 1987 letter from the Bessemer district attorney requesting a copy of the Kentucky conviction; (3) a copy of Springer’s criminal history from the Alabama Criminal Justice Information Center; (4) a case-action summary from Springer’s escape charges; and (5) a case-action summary showing Springer was charged with promoting prison contraband. The circuit court held, however, that none of these exhibits met the definition of newly discovered evidence under Rule 32.1(e), Ala. R.Crim. P. We agree.
Rule 32.1(e), Ala. R.Crim. P., defines newly discovered evidence as follows:
“(1) The facts relied upon were not known by petitioner or petitioner’s counsel at the time of trial or sentencing or in time to file a posttrial motion pursuant to Rule 24, or in time to be included in any previous collateral proceeding and could not have been discovered by any of those times through the exercise of reasonable diligence;
“(2) The facts are not merely cumulative to other facts that were known;
“(3) The facts do not merely amount to impeachment evidence;
“(4) If the facts had been known at the time of trial or of sentencing, the result probably would have been different; and
“(5) The facts establish that petitioner is innocent of the crime for which the petitioner was convicted or should not have received the sentence the petitioner received.”
Here, the record shows, and the circuit court held, that Rogers’s defense counsel, Tommy Nail, specifically cross-examined Springer about (1) an escape charge he had in the Jefferson Circuit Court, which was nolle prossed; and (2) a pending promoting-prison-contraband charge against Springer in the Bessemer Circuit Court. Nail also cross-examined Springer about *428 his prior felony convictions in Alabama, and Nail and Musgrove’s counsel called seven witnesses at trial to impeach Springer. Thus, as the circuit court noted, “[a]ny conviction Springer may have had from Kentucky under an alias would have been impeachment and would have been cumulative to the wealth of other impeachment evidence used by ... Nail in cross-examination.” (C. 55.)
In Part I.B.3 of his brief to this Court, Musgrove asserts that “newly developed independent evidence corroborates Mr. Springer’s recantation and evidences that he received a deal.” (Musgrove’s brief, p. 30.) In Parts I.B.3.a.-c. of his brief, he cites these specific items of evidence: (1) testimony from Linda Baird, who was married to Springer at the time of trial, and testimony from Springer and Baird’s daughter, Shannon Macon Kiley; (2) records that, Musgrove asserts, demonstrate that Springer was given a deal in exchange for his trial testimony; and (3) testimony from Musgrove’s daughter, Tandelyn Hickman.[8] Baird and Kiley
With regard to Baird and Kiley, Mus-grove asserts that the circuit court abused its discretion in refusing to permit Mus-grove to call Baird and Kiley to testify. Musgrove proffered affidavits from Baird and Kiley. According to Baird’s affidavit, which was dated June 5, 1999, Springer told her in June 1992 that he had fabricated his testimony about Rogers’s confession; specifically, Baird’s affidavit asserted that Springer said the State had provided him with the details about the crimes. Further, Baird’s and Kiley’s affidavits indicated that Springer appeared to have received preferential treatment from the State.
As noted above, the circuit court did not abuse its discretion in excluding Springer’s recantation. Because Springer’s recantation was properly excluded by the circuit court, the circuit court did not abuse its discretion in disallowing other evidence offered to corroborate the recantation — such as Baird’s and Kiley’s testimony. See Ex parte Loggins, supra.

Records of Cases Against Springer

Musgrove also offered, as evidence at the Rule 32 hearing, records that indicated that the State nolle prossed one of Springer’s cases in September 1987 before he testified at the trial and then nolle prossed another case in February 1988 after he testified. These allegations, however, do not meet the definition of newly discovered evidence under Rule 32.1(e), Ala. R.Crim. P. Springer testified at trial that an escape charge against him had been nolle prossed before trial — the State asserts that this charge is the charge that Springer’s affidavit asserts was nolle prossed in September 1987, and Musgrove does not dispute that assertion. Further, Springer admitted during the trial that he had a pending charge against him in the Bessemer Circuit Court. That charge appears to have been dismissed on February 22, 1988 — after Musgrove’s trial. The *429 hearing on Musgrove’s motion for a new trial, however, was not held until July 1, 1988. Thus, evidence that the charge had been nolle prossed was available in time for Musgrove to present it at the hearing on the motion for a new trial. Consequently, this allegation does not meet the definition of newly discovered evidence. Rule 32.1(e)(1), Ala. R.Crim. P.[9] Moreover, as noted above, Springer’s testimony was not offered or admitted against Musgrove; this allegation is therefore not relevant to Musgrove’s case.

Hickman’s Testimony

Finally, as evidence that he asserts corroborates Springer’s recantation, Mus-grove cites the testimony of Hickman at the Rule 32 hearing; specifically, Hickman recanted the testimony she had given to the grand jury asserting that Musgrove had admitted to participating in the crime. In her recantation, Hickman asserted that the State pressured her into testifying, provided her with details about the crime, promised and paid her money, and told her that the pending criminal charges against her would be dropped.
Initially, we note that Hickman’s testimony is not newly discovered evidence under Rule 32.1(e), Ala. R.Crim. P., a point Musgrove conceded at the Rule 32 hearing. (R. 441 (“[Musgrove’s counsel]: I repeat that it is not offered as newly discovered evidence .... [I]t was brought before Your Honor and it was discussed in connection with the motion for new trial.”).) Moreover, the circuit court did not abuse its discretion in finding, in its order denying relief, “that Hickman’s evidentiary hearing testimony was completely unworthy of belief.” [10] Hunt, 940 So.2d at 1049; see also Jackson, 963 So.2d at 154-55.
C.
In Part I.C. of his brief, Musgrove alleges that the State’s ballistics evidence was “unreliable” and “manufactured.” (Mus-grove’s brief, p. 38.) Further, he asserts that “unrebutted expert testimony establishes that the cartridge shell casing introduced at trial was not the casing found at the crime scene.” (Musgrove’s brief, p. 38.)
1.
In its order denying the petition, the circuit court analyzed part of this claim in the following manner:
“B. Claims That The State Knowingly Presented Fabricated Evidence.
“36. In Part II.A(2), paragraphs 35-38 on pages 8-9 of his second amended petition, Musgrove claims he has ‘[n]ew evidence’ that ‘the State knowingly introduced fabricated physical evidence and related false testimony.’ (Second Amended Petition on p. 9) The evidence and testimony Musgrove refers to in Part II.A(2) concern two 9mm shell casings that were admitted into evidence against him at trial. One 9mm shell casing, State’s Trial Exhibit 32, was recovered from the murder scene. The second 9mm shell casing, State’s Trial Exhibit 45, was recovered from a house at 110 Ketona Road. Lawden Yates, a *430 ballistic expert with the Alabama Department of Forensic Sciences, compared State’s Trial Exhibit 82 and State’s Trial Exhibit 45 and concluded they were fired from the same gun. (R. 1541-1542)
“B(l), Claim [that] the State fabricated evidence.
“37. In paragraph 86 Musgrove claims the 9mm shell casing recovered at the crime scene is not the same 9mm shell casing that was introduced into evidence at his trial. Ted Williams, an evidence technician with the JCSO [Jefferson County Sheriffs Office] testified he recovered State’s Trial Exhibit 32 from the murder scene. (R. 1096-1097) Williams also authenticated State’s Trial Exhibit 23, a photograph of State’s Exhibit 32 on the floor of the victim’s house. (R. 1088)
“38. In support of his claim, Mus-grove presented the testimonies of Paul Kayfetz and Mark Shattuck. Kayfetz is an expert in the field of engineering photography. (E.R.90-260) At the scene of the victim’s murder, and using equipment similar to that used by Williams in 1986, Kayfetz took photographs of the 9mm casing admitted into evidence at Musgrove’s trial. Kayfetz also took photos of other 9mm shell casings of varying degrees of tarnish. (Petitioner’s Exhibits 21A.2-21A.9) Kay-fetz also scanned State’s Exhibit 23, the photo taken by Williams in 1986. (Petitioner’s Exhibit 21.A.1) Kayfetz adjusted the color in the photos he took to match the color in State’s Trial Exhibit 23. (E.R.159-164) Kayfetz placed similar items in his photos to those in the original photo; a Fisher Price Activity Center toy, a green and white stuffed bear, and a comb. Kayfetz took additional photographs using other 9mm shell casings of varying degrees of tarnish. Based on his comparison of the photographs he took of State’s Trial Exhibit 32 with his scanned image of State’s Trial Exhibit 23, Kayfetz concluded that the 9mm shell casing depicted in State’s Trial Exhibit 23 is not the same 9mm shell casing that was admitted at Mus-grove’s trial as State’s Trial Exhibit 32.
“39. Mark Shattuck, an expert in reconstruction and bioengineering, was also presented by Musgrove. (E.R.261-304) Shattuck helped determine how the camera, cartridges, and the items photographed by Kayfetz should be positioned. Shattuck also discussed the protocols used in the photographs and discussed scanning State’s Trial Exhibit 23. Shattuck also opined that the 9mm shell casing depicted in State’s Trial Exhibit 23 was not the 9mm shell casing admitted in Musgrove’s trial. (E.R.289)
“40. This Court has a working knowledge of photography. This Court studied the photos presented by Mus-grove and the considered testimony from Kayfetz and Shattuck. Further, while searching for another item of evidence admitted during trial, this Court discovered State’s Trial Exhibit 22, another photo of the 9mm shell casing in question taken by Ted Williams at the crime scene in 1986. In State’s Trial Exhibit 22 the 9mm casing appears brighter and more reflective that [sic] it appears in State’s Trial Exhibit 23., This Court also notes that there were considerable differences in. the lighting between Petitioner’s Exhibits 21A-2 through 21A-9 and Petitioner’s Exhibit 21A-1.
“41. In photography, small differences in lighting, angles, and equipment can make a huge difference. It is also very important that the final prints be made on the same brand and grade of paper as the original print, with the same processing time and photo chemis *431 try. Small differences in photo processing can make large differences in the final print. This Court has never heard of this type of analysis being used to identify shell casings. Kayfetz stated that he had never used this methodology to identify cartridge shell casings. (E.R.225) Shattuck indicated he had used similar methods to determine if some shell casings had been run over, but not about tarnish. (E.R.294)
“42. As previously stated, Yates testified that State’s Trial Exhibit 32 and State’s Trial Exhibit 45 were fired from the same gun. The two 9mm shell casings were recovered by different people at different times and from different locations. Musgrove presented no evidence whatsoever attacking Yates’s conclusion that State’s Trial Exhibit 32 and State’s Trial Exhibit 45 were fired from the same gun. What the two casings have in common is that both were turned over to Tom Salter, another JCSO evidence technician, who, in turn, delivered them to Yates on October 20, 1986.
“43. The evidence presented through Kayfetz and Shattuck does not convince this Court that members of the Jefferson County Sheriffs Department and/or the Jefferson County District Attorney’s Office presented fabricated evidence or false testimony at Musgrove’s trial. This claims is, therefore, denied. Rule 32.3, Ala. R.Crim. P.”
(C. 62-67.)
According to Musgrove, the photographic analysis Paul Kayfetz performed and his testimony establish that the shell casing “photographed in State’s Exhibit 23 was much darker, more pitted, and more tarnished than exemplar number 4 or State’s Exhibit 32.” (Musgrove’s brief, p. 47.) In short, Musgrove asserts that Kayfetz’s analysis and testimony establish that the shell casing admitted into evidence as State’s Exhibit 32 is not the same shell casing that was photographed in State’s Exhibit 23, and Musgrove argues that the circuit court “disregarded the unrebutted expert testimony” to that effect.
Initially, we question whether this claim meets the definition of newly discovered evidence. At best, the evidence from Kay-fetz and Mark Shattuck calls into question whether the shell casing in State’s Exhibit 23 is the same shell casing that was introduced at trial; that evidence does not, however, demonstrate that Musgrove is necessarily innocent. See Rule 32.1(e)(5), Ala. R.Crim. P.
Even so, we note that the above-quoted portion of the order indicates that the circuit court did not disregard the experts’ testimony. Rather, the circuit court considered that testimony but ultimately disagreed with its conclusions.
Musgrove argues, however, that in disagreeing with Musgrove’s experts and denying relief the circuit judge improperly relied “on his own photography expertise.” Further, Musgrove objects to the circuit judge’s reliance on evidence from the trial (specifically, another photograph introduced by the State at Mus-grove’s trial); Musgrove argues that the circuit judge prevented him from being able “to cross-examine the basis for [the circuit court’s] conclusions and the extent of his expertise.” (Musgrove’s brief, p. 50.) Musgrove argues, therefore, that the circuit court’s judgment must be reversed on this basis. We disagree.
As noted, Musgrove had the burden of proving to the circuit court, by a preponderance of the evidence, the facts necessary to establish that he is entitled to relief on this claim. Rule 32.3, Ala. R.Crim. P. Here, the circuit court based its conclusion on its review of the evidence *432 submitted by Musgrove at the evidentiary hearing as well as the evidence submitted in Musgrove’s trial — in particular, State’s Trial Exhibit 22 in which “the 9mm casing appears brighter and more reflective tha[n] it appears in State’s Trial Exhibit 23” and the evidence of a complete chain of custody for the shell casing recovered from the murder scene and introduced at trial. In resolving this factual question, the opinions of Musgrove’s experts were not binding on the circuit court. State v. Austin, 596 So.2d 598, 601 (Ala.Crim.App.1991) (“Expert opinion testimony may not be binding on a trial court, even if it is uncon-tradicted. ‘[A]n expert opinion is not conclusive on the trier of fact even if the testimony was uncontroverted. Furthermore, the weight and credibility to be attributed to an expert witness is for the trier of fact.’ ” (quoting Clark Lumber Co. v. Thornton, 360 So.2d 1019, 1021 (Ala.Civ. App.1978))). Further, Musgrove has not demonstrated that the circuit court abused its discretion in making this determination.[11] See Boyd, 913 So.2d at 1122. See also Jackson, 963 So.2d at 154-55 (where there are two permissible views of the evidence, the circuit court’s choice between them cannot be clearly erroneous).
2.
Related to his claim based on Kayfetz’s testimony, Musgrove alleges that the State planted the 9mm shell casing found at an address on Ketona Road in Tarrant — the shell casing that the State’s evidence at trial indicated matched the shell casing recovered at the murder scene. In support of this claim, Musgrove first cites an October 2, 1986, report in which Sgt. Howard Brooks of the Jefferson County Sheriffs Office •wrote that Musgrove had pistol-whipped David Phillips almost three months earlier at an address on Ketona Road. According to the *433 October 2, 1986, report, the pistol was a 9mm weapon, and Musgrove was alleged to have fired a shot from it. Musgrove claims that the October 2,1986, report was “false” because, Musgrove says, Sgt. Brooks could not have known about the caliber of the weapon. That is so, Mus-grove says, because (1) the July 1986 report of the pistol-whipping incident does not describe the caliber of the weapon used and (2) Phillips testified at trial that he could not identify the caliber of the weapon used. Additionally, Musgrove points out that a friend of Phillips — Danny Goodwin — who accompanied Phillips to the police station the night of the pistol-whipping incident, testified at Musgrove’s trial that he recovered a .45-caliber shell casing at the Ketona Road address on the night of the incident.
Finally, Musgrove cites the testimony of Norman Harris, a retired investigator for the Jefferson County Sheriffs Office, who testified at the evidentiary hearing on Musgrove’s petition. Harris testified that an evidence technician following standard practice in criminal investigations should mark a shell casing at the time it is recovered from a scene. Musgrove points out, however, that the shell casings in his case were not marked at the respective scenes from which they were recovered. Rather, the first inscription on both casings was made by Lawden Yates of the Alabama Department of Forensic Sciences on October 20, 1986 — three weeks after the shooting.
The circuit court’s order denying Mus-grove’s petition addresses this claim in the following manner:
“44. In paragraphs 87-38 Musgrove claims that Sergeant Howard Brooks planted State’s Trial Exhibit 45, the 9mm cartridge casing that he testified he recovered at [the] Ketona Road [address]. Musgrove claimed he had ‘a new witness [that] is available to impeach Sergeant Brooks’ story.’ (Second Amended Petition on p. 9) The only testimony at the evidentiary hearing concerning the shell casing recovered from Ketona Road was ... elicited from retired JCSO [Jefferson County Sher--iffs Office] Investigator Norman Harris. Harris testified that the shell casing should have been marked by the person recovering it on the inside.
“45. Harris was not present at the house on Ketona Road when Brooks recovered the shell casing. Even if Brooks or Salter did not follow accepted JCSO procedure by not marking the 9mm shell casing recovered from Ketona Road that fact alone does not prove it was planted. This Court finds that Musgrove failed to elicit any evidence from Harris that would be considered newly discovered as defined by Rule 32.1(e), proving that Howard Brooks planted the 9mm shell casing at [the address on] Ketona Road. Rule 32.3, Ala. R.Crim. P.”
(C. 67-68.)
Initially, we question whether any of the foregoing meets the definition of newly discovered evidence. Rule 32.1(e), Ala. R.Crim. P. Moreover, we agree with the circuit court’s analysis. Musgrove has not demonstrated that the circuit court abused its discretion in rejecting Musgrove’s allegation that the foregoing demonstrates that the State fabricated or planted evidence. Accordingly, the circuit court properly denied this claim.
3.
In Part I.C.5. of his brief, Musgrove asserts that Kayfetz’s and Shattuck’s conclusions “are supported by new evidence of an eyewitness at the crime scene [Barron’s *434 sister, Sherri Alien[12]], who noted that the cartridge shell casing was tarnished.” (Musgrove’s brief, p. 56.) Musgrove proffered an affidavit purportedly signed by Allen in May 1996 in which Allen asserted, among other things, that, immediately before the evidence technician recovered the shell casing at the house in which Barron was killed, Allen saw a shell casing on the living-room floor. (C. 1210.) Musgrove also proffered an affidavit from Josiah Thompson, a private investigator, in which Thompson asserted that in June 2001 Allen stated that the casing she had seen “wasn’t shiny.” Thompson also asserted in his affidavit that Allen stated in March 2006 that the cartridge “was dull looking” and not “bright or anything.” (C. 1206.)
At the evidentiary hearing, Allen invoked her Fifth Amendment right and refused to testify. As we discuss in Part IX.B.-C. below, the circuit court did not err in refusing to compel her testimony, particularly when the substance of her testimony was included in the proffered affidavits. More importantly, Musgrove did not demonstrate that either Allen’s testimony in the proffered affidavits or the testimony Allen allegedly would have offered at the hearing meets the definition of newly discovered evidence. See Rule 32.1(e)(l)-(5), Ala. R.Crim. P. Therefore, Musgrove was not entitled to relief on this claim.
D.
In Part I.D. of his brief, Musgrove claims that “new fact witnesses, unrebut-ted expert testimony, and other new evidence demonstrates that Libby Barron’s identification of [Musgrove] was staged by the State.” (Musgrove’s brief, p. 57.)
1.
Musgrove alleges that the State did not disclose statements Libby Baron allegedly made to Cynthia Dunlap, a trainee with the Jefferson County Sheriffs Office, who, along with Deputy Daniel Hallmark, was the first law-enforcement officer to arrive at the crime scene.
The circuit court addressed this claim in the following manner:
“[Musgrove] claim[s] the State withheld prior inconsistent statements by Libby Barron that she did not see Mus-grove’s or Roger[s]’s face in a photo line-up or at the physical line-up.
“97. In an apparent attempt to prove this Brady [v. Maryland, 373 U.S. 83 (1963),] claim, Musgrove called former JCSO [Jefferson County Sheriffs Office] deputy Cynthia Dunlap. Dunlap testified that she and her training officer, Deputy Daniel Hallmark, were the first law enforcement officers on the murder scene and arrived just after paramedics. (E.R.586) According to Dunlap, Libby Barron ‘basically’ said initially she did not see anything and could not identify the perpetrators. (E.R.602) Dunlap said she first saw Jamie Crawford outside the Barron[s’] house and that she, Dunlap, escorted paramedics into the house while Hallmark stayed in the sheriffs car due to a migraine headache. (E.R. 599-600) Dunlap said Hallmark was not present when she spoke to Barron and Crawford and that she never saw him speak to them. (E.R.604-605) Dunlap identified the incident report she completed which was admitted at Mus-grove’s trial as Defendant’s Exhibit Number 40 and at the evidentiary hearing as Petitioner’s Exhibit Number 6D. (E.R.609)
*435 “98. Musgrove failed to prove that Dunlap’s testimony meets all five requirements of newly discovered evidence in Rule 32.1(e), Ala. R.Crim. P. Dunlap testified that, if asked, she would have told [Musgrove’s counsel] and [Rogers’s counsel] what she testified to at the evidentiary hearing. (E.R.612) [Mus-grove’s counsel] knew about Dunlap’s participation at the crime scene because he had a copy of the incident report she filled out and signed which was admitted as a defense exhibit. There is nothing in Dunlap’s written report indicating Barron said anything to her about not being able to identify the perpetrators. Also, there was no testimony elicited from Dunlap proving she ever told anyone what she now claims Libby Barron said to her at the scene. See Ex parte Cammon, 578 So.2d 1089, 1091 (Ala.' 1991) (holding that ‘Brady does require that the information requested by a criminal defendant be known to the prosecution’). It is also obvious from her hearing testimony that Dunlap was available to testify at Musgrove’s trial. Rule 32.1(e)(1), Ala. R.Crim. P. Moreover, if offered at Musgrove’s trial, Dunlap’s testimony would have been, at most, cumulative to other testimony presented by [Musgrove’s counsel] to impeach Libby Barron’s identifications of Musgrove. Rule 32.1(e)(2) and (3), Ala. R.Crim. P.
“99. This Court also notes that Dunlap’s testimony at Musgrove’s evidentia-ry hearing differs greatly from Daniel Hallmark’s testimony at Musgrove’s trial. (R. 1052-1073) According to Hallmark, he went into the Barronfs’] house and found Jamie Crawford on a couch in the front room and the victim on the floor. (R. 1055) Hallmark testified it was he that first talked to Barron and Crawford and that Dunlap filled out the incident report, in part, based on his notes (R. 1062-1063) Hallmark also said Dunlap was with him while he interviewed Barron and Crawford. (R. 1064)
“100. This Court finds that any claim the State violated Brady for not specifically identifying Ms. Dunlap to [Mus-grove’s counsel] is precluded from post-conviction review. Rules 32.2(a)(3) and (a)(5), Ala. R.Crim. P.; see also Hinton v. State, [[Ms. CR-04-0940, Apr. 28, 2006] — So.3d - (Ala.Crim.App. 2006) ] (holding ‘[w]here claims raised under Brady v. Maryland, 373 U.S. 83 (1963), are not based upon newly discovered evidence the procedural bars of Rule 32.2(a) apply’)[, rev’d on other grounds, Ex parte Hinton, [[Ms. 1051390, Oct. 17, 2008] — So.3d(Ala.2008) ].”
(C. 92-95.)
In McWhorter v. State, 142 So.3d 1195 (Ala.Crim.App.2011), this Court stated:
“A postconviction Brady[ v. Maryland, 373 U.S. 83 (1963),] claim raised in a Rule 32 petition must meet all five prerequisites of ‘newly discovered evidence’ in Rule 32.1(e), Ala. R.Crim. P. Payne v. State, 791 So.2d 383, 398 (Ala. Crim.App.1999). Numerous recent opinions of this Court have held that a petitioner’s Rule 32 Brady claim is procedurally barred if the petitioner fails to plead that his claim- is based on newly discovered evidence and could not have been raised at trial or on direct appeal. See, e.g., Bryant v. State, [Ms. CR-08-0405, Feb. 4, 2011] — So.3d-(Ala. Crim.App.2011); Ray [v. State, 80 So.3d 965 (Ala.Crim.App.2011) ]; Davis [v. State, 44 So.3d 1118 (Ala.Crim.App. 2009) ]; Windsor [v. State, 89 So.3d 805 (Ala.Crim.App.2009) ]; Beckworth [u State, [Ms. CR-07-0051, May 1, 2009] — So.3d - (Ala.Crim.App.2009)]; Smith v. State, 71 So.3d 12 (Ala.Crim. *436 App.2008); Ferguson v. State, 13 So.3d 418, 444-45 (Ala.Crim.App.2008).
[[Image here]]
“McWhorter cites Ex parte Pierce, 851 So.2d 606 (Ala.2000), and McGahee v. State, 885 So.2d 191 (Ala.Crim.App. 2003), for the proposition that the newly-diseovered-evidence standard of Rule 32.1(e) does not apply to Rule 32 claims based on alleged violations of the defendant’s constitutional rights. McWhorter’s argument is misplaced because his Brady claim is procedurally barred. In Pierce, the Alabama Supreme Court held that Rule 32.1(e) did not apply to a juror-misconduct claim because the petitioner’s claim was a constitutional claim under Rule 32.1(a). The Court, however, went on to state that ‘[although Rule 32.1(e) does not preclude Pierce’s claim, Rule 32.2(a)(3) and (5) would preclude Pierce’s claim if it could have been raised at trial or on appeal.’ Pierce, 851 So.2d at 614. The Court stated that Pierce’s claim was barred under Rule 32.2(a)(3) and 32.2(a)(5) unless ‘he established that the information [forming the basis of his claim] was not known, and could not reasonably have been discovered, at trial or in time to raise the issue in a motion for new trial or on appeal.’ Pierce, 851 'So.2d at 616. Thus, although McWhorter does not have to prove that his Brady claim is based on ‘newly discovered-material facts’ as defined under Rule 32.1(e)(l)-(5), he must still plead facts indicating that his claim could not have been raised at trial or on direct appeal to avoid being procedurally barred under Rule 32.2(a)(3) and 32.3(a)(5). This requires McWhorter to plead that the State’s alleged concealment of Rice’s statement ‘was not known, and could not reasonably have been discovered, at trial or in time to raise the issue in a motion for new trial or on appeal.’ Pierce, 851 So.2d at 616. See also Hunt [v. State, 940 So.2d. 1041 (Ala.Crim.App.2005) ], Boyd v. State, 913 So.2d 1113 (Ala.Crim.App.2003), and Windsor v. State, 89 So.3d 805 (Ala. Crim.App.2009).”
142 So.3d at 1259. See also Madison v. State, 999 So.2d 561 (Ala.Crim.App.2006); Hyde v. State, 950 So.2d 344 (Ala.Crim. App.2006); Duncan v. State, 925 So.2d 245 (Ala.Crim.App.2005); Barbour v. State, 903 So.2d 858 (Ala.Crim.App.2004) (recognizing that Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), claims are subject to the procedural bars in a postconviction proceeding).
Here, Musgrove does not dispute that his trial counsel knew that Dunlap was one of the first officers on the crime scene. As noted, the defense introduced Dunlap’s report into evidence at Musgrove’s trial. Further, Musgrove’s trial counsel used a copy of that written report to cross-examine Deputy Hallmark. Finally, Dunlap testified at the evidentiary hearing that she would have spoken with Musgrove’s trial counsel if she had been asked. Thus, Musgrove failed to show that Dunlop’s testimony could not have been discovered and presented at his trial. Rule 32.1(e)(1), Ala. R.Crim. P. Accordingly, because Musgrove failed to demonstrate that the claim was based on newly discovered evidence, the circuit court did not abuse its discretion in finding that Musgrove’s Brady claim related to Dunlap was procedurally barred.
2.
Musgrove alleges that “new evidence” demonstrates that Sgt. Brooks fabricated Libby Barron’s identification of Musgrove. Brooks testified that during an interview with Libby on October 1, 1986, Libby identified Musgrove in a photographic lineup.
On direct appeal, this Court addressed Musgrove’s argument that the identifica *437 tion testimony at trial was unreliable. This Court stated:
“Both appellants argue that the admission of identification testimony violated their rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and under Alabama law. Specifically, both appellants contend that Libby Barron’s in-court identification of them was unreliable because of unduly suggestive pretrial procedures. The appellants contend that their photographs, used in the array for pretrial identification, were ‘out of focus’ when compared to the other photographs in the array. The appellants failed to object on this specific ground at trial or in their motion to suppress and raised only the general issue that the pretrial identification was ‘unduly suggestive’ in the motion for new trial. The issue of the photograph’s clarity is raised for the first time on appeal and therefore must rise to the level of plain error to require reversal. Rule 45A, [Ala.] R.App. P.
“The record indicates that a hearing was held on the appellants’ motion to suppress any in-court identifications by witnesses because these witnesses were subjected to improper out-of-court identification procedures. At the hearing, a sergeant with the Jefferson County Sheriffs Department testified that he showed Libby Barron, the victim’s widow, a set of five photographs and that she selected the appellants’ photographs as the men who had killed her husband. Libby Barron also testified to her identification and, during trial, the photographs from the photographic lineup were admitted.
“ ‘Pre-trial identifications are to be set aside on grounds of prejudice only if the pre-trial identification procedure is so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. Scott v. State, 479 So.2d 1343 (Ala.Crim.App.1985). The totality of the circumstances surrounding the out-of-court identification need be analyzed only when the pre-trial procedures used were unnecessarily or impermissibly suggestive. Coleman v. State, 487 So.2d 1380 (Ala. Crim.App.1986). The fact that witnesses are shown photographs does not establish suggestiveness. Matthews v. State, 401 So.2d 241 (Ala. Crim.App.1981), cert, denied, 401 So.2d 248 (Ala.1981).’
“Ex parte Stout, 547 So.2d 901, 904 (Ala. 1989).
“A review of the photographs contained in the record reveals that the array was not impermissibly suggestive. None of the photographs are of high quality. All of the photographs are col- or photographs depicting white males of approximately the same age and build. Each photograph has a red background, and the photographs are approximately the same size. The record suggests no impropriety in the out-of-court identification.”
Musgrove, 638 So.2d at 1351.
In the instant case, Musgrove cites the May 1996 affidavit of Sherri Allen, which states that Libby told Allen that Sgt. Brooks had shown her pictures of Mus-grove and Rogers and that Brooks identified them as the individuals who had shot Barron. Musgrove also notes that Sgt. Brooks did not follow proper procedure and make a written record of the October 1,1986, photographic lineup.
Musgrove also cites testimony from Deputy Harris at the hearing on Mus-grove’s motion for a new trial; specifically, Deputy Harris testified that a tape-recorded statement was not taken from Libby, and Musgrove asserts Harris’s testimony *438 on that point was “not credible.” (Mus-grove’s brief, p. 62.) Harris’s testimony at the hearing on the motion for a new trial was inconsistent with Harris’s testimony at Musgrove’s preliminary hearing, where Harris testified that he had tape-recorded an interview with Libby and that she had provided descriptions of the killers.[13]
In its order, the circuit court stated that “Musgrove failed to prove by a preponderance of the evidence [that] a photo lineup between Libby Barron and Howard Brooks did not take place just as Brooks testified.” (C. 89.) Additionally, the circuit court stated:
“Claims that Howard Brooks ‘coached’ or otherwise improperly influenced Libby Barron’s identification of Musgrove and his codefendant were raised pretrial, during trial, and at the hearing on Musgrove’s motion for new trial. The Court finds that this Brady claim is procedurally barred from postconviction review because it was raised at trial and because it could have been raised on direct appeal. Rule 32.2(a)(2) and (a)(5), Ala. R.Crim. P.”
(C. 92 (emphasis added).) Thus, the circuit court held that the claim that Libby was shown pictures and told whom to identify was procedurally barred because it had been raised and addressed at trial and because it could have been raised on appeal but was not. (C. 96.) Finally, regarding Deputy Harris’s inconsistent testimony, the circuit court stated:
“33. In his motion for new trial, Musgrove claimed that the State violated Brady by not providing Mr. Driskill a copy of an alleged audio-tape recorded statement between Barron and law enforcement. (R. 2943-2944, 2541) This Court heard extensive testimony on this issue from Sergeant Norman Harris of the Jefferson County Sheriff’s Office (JCSO). (R. 2521-2566) At the motion hearing Harris admitted he had testified at the preliminary hearing in this case that he had taken a tape recorded statement from Barron. (R. 2524) Harris went on to state that his preliminary hearing testimony was incorrect and that, to the best of his knowledge, no tape-recorded statement between law enforcement and Libby Barron ever existed. (R. 2526) Harris said he did not take a tape-recorded statement from Barron because she ‘was too upset to talk to me.’ (R. 2532) This Court found Harris’[s] testimony entirely credible and denied Musgrove’s motion for a new trial based on his claim the State violated Brady. (R. 2855)
“34. This Court finds that this Brady claim is procedurally barred from post-conviction review because it was raised by [Musgrove’s counsel] and specifically addressed by this Court. Rule 32.2(a)(2), Ala. R.Crim. P. This Court also finds this Brady claim is procedurally barred from postconviction review because it could have been but was not raised on direct appeal. Rule 32.2(a)(5), Ala. R.Crim. P.
“35. In the alternative, even if this Brady claim was not procedurally *439 barred from postconviction review, Mus-grove would not be entitled to relief. Musgrove failed to present any evidence at the evidentiary hearing proving an audio-tape recorded interview between Barron and anyone with law enforcement officers ever existed. Therefore, Musgrove failed to carry his burden of proving by a preponderance of evidence the State violated its Brady obligation. Rule 32.3, Ala. R.Crim. P.”
(C. 60-62.)
The circuit court’s order demonstrates that Musgrove’s claim is not based on allegations that meet the definition of newly discovered evidence under Rule 32.1(e), Ala. R.Crim. P. Musgrove has not demonstrated that the circuit court abused its discretion in making the above findings and rejecting his claim.
3.
In Part I.D.3. of his brief, Mus-grove contends that “[n]ewly available expert testimony adduced by [Musgrove] at the Rule 32 hearing proves that Mrs. Barron could not have accurately identified Mr. Musgrove.” (Musgrove’s brief, p. 63.) This claim is based primarily on expert testimony from Dr. Elizabeth F. Loftus— an expert on the topic of eyewitness identification — and testimony from Kayfetz.[14]
The circuit court rejected this claim, stating:
“Because Musgrove admits in Part II.A [of] his second amended Rule 32 [petition] that the new witnesses would be offered specifically to impeach Libby Barron’s trial testimony, this testimony would not be admissible because it does not meet the definition of newly discovered evidence.... In the alternative, this Court finds that Musgrove failed to carry his burden of proving these allegations by a preponderance of evidence as required by Rule 32.3, Ala. R.Crim. P.”
(C. 98-99.) We agree with the circuit court’s findings.
On appeal, Musgrove describes the expert testimony as “newly available evidence.” Rule 32.1(e), however, addresses newly discovered evidence. Additionally, Musgrove attempts to recast the expert testimony as amounting to more than merely impeachment evidence. He states: “[I]t goes to the inability of Mrs. Barron to make any identification without improper actions by the State and so is not merely impeachment evidence.” (Musgrove’s brief, p. 71 n. 20.) Musgrove argued at trial and on appeal, however, that improper actions by the State tainted Libby’s identification of Musgrove; Musgrove made those arguments in an attempt to discredit or impeach Libby’s identification of Musgrove and to discredit or impeach the State’s assertion that it had not tainted Libby’s identification of Musgrove. The “newly available evidence” Musgrove asserts in his Rule 32 petition was offered to achieve that same result. Thus, the circuit court did not abuse its discretion in denying relief on this claim.
4.
In Part I.D.4. of his brief, Musgrove asserts that “other evidence corroborates the false identification evidence.” (Mus-grove’s brief, p. 72.) Specifically, Mus-grove asserts that Sgt. Brooks “created” a false report in which he indicated that Crawford identified Musgrove in a photographic lineup. Specifically, Musgrove cites an October 7, 1986, report by Sgt. Brooks that indicates that Crawford iden *440 tified Musgrove in a photographic lineup. However, Sgt. Brooks testified at trial that Crawford could not make a positive identification. Thus, any discrepancy between Brooks’s report and his trial testimony was apparent at the time of Mus-grove’s trial.
In this section, Musgrove also reasserts evidence discussed elsewhere in this opinion. None of this evidence is newly discovered under Rule 32.1(e), Ala. R.Crim. P. Thus, this claim was properly denied.
5.
In Part I.D.5., Musgrove asserts that his “rights to counsel and due process were violated by the State’s conduct at the lineups at which Mr. Musgrove was identified.” (Musgrove’s brief, p. 73.) More specifically, Musgrove reasserts his claim that “the initial identification procedures in this case — the purported photographic line-up and the subsequent live line-up— were unnecessarily and impermissibly suggestive.” (Musgrove’s brief, p. 74.) As discussed above, this Court specifically reviewed this issue for plain error on direct appeal. Additionally, as noted above in Part I.D.2. of this opinion, the circuit court held that this claim was procedurally barred and, alternatively, that Musgrove had failed to prove it by a preponderance of the evidence. Musgrove does not address these holdings by the circuit court. The circuit court did not abuse its discretion in denying relief on this claim.
E.
In Part I.E. of his brief, Musgrove claims that “new evidence” at the Rule 32 hearing rebutted the evidence the State had offered at trial to undermine Mus-grove’s alibi defense.
On direct appeal, Musgrove argued that the evidence the State offered to undermine his alibi defense was false. This Court addressed the claim as follows:
“The appellants argue that allegedly false testimony, which was material to the return of the guilty verdicts at the guilt phase, was offered and that they are therefore entitled to a new trial. However, the appellants are not entitled to a new trial on this ground because they have proved neither that the cited testimony was false nor that there is a significant possibility that, had the jury heard the truth, a different result would have been reached. Ex parte Frazier, 562 So.2d 560, 570 (Ala.1989).
“The record indicates that the appellants presented an alibi defense through the testimony of two witnesses who stated that they were in Bradenton, Florida, from August 28, 1986, until October 6, 1986, with the appellants. In rebuttal, the State presented the testimony of a witness who stated that in September 1986, he lived in Smyrna, Georgia, and that he last recalled having seen his wallet and its contents in the glove compartment of his 1986 Oldsmobile automobile on Sunday, September 28, 1986, which was parked in front of his apartment. The witness also identified his wallet, which was recovered from appellant Rogers’s possession at the time of his arrest. At the hearing on the motion for a new trial, the defense introduced a copy of the incident report from the Smyrna Police Department, reporting the theft of the Oldsmobile and indicating that it was reported stolen on September 29, 1986. However, this evidence does not prove that the testimony of the State’s witness, that he last saw his automobile on September 28, 1986, was false. Moreover, the State, during the hearing on the motion for a new trial, introduced a letter from an employee of an insurance company, stating that the State’s witness reported his Oldsmobile stolen on September 29, *441 1986. Thus, the appellants failed to prove that the witness testified falsely or that, had the jury heard the truth, there is a significant chance that it would have reached a different result.
[[Image here]]
“... In the present case, the pertinent testimony was not perjured, and the trial court properly denied the appellants’ motion for new trial.”
Musgrove, 638 So.2d at 1359-60.
In its order denying the Rule 32 petition, the circuit court stated:
“26. In Part II.A(1), paragraphs 28-29 on page six of his second amended Rule 32 petition, Musgrove claims the State offered the allegedly false testimony of Terry Dockery to rebut his alibi evidence. Musgrove claims that Dock-ery’s testimony was false in that (1) Dockery lied about the date his car was stolen and (2) Dockery lied about when he received the wallet that was recovered from Rogers. Dockery testified at trial he received the wallet in 1965 as a high school graduation gift.
“27. This Court finds that Mus-grove’s first claim, that Dockery -lied about the date his car was stolen, is procedurally barred from postconviction review because it was raised and addressed during the hearing on Mus-grove’s motion for new trial. (R.1923-1973, 2643-2692, 2800-2801, 3078-3084); Rule 32.2(a)(2), Ala. R.Crim. P. This Court also finds that this claim is procedurally barred from postconviction review because it was raised and addressed on direct appeal. Musgrove v. State, 638 So.2d at 1359-1360 (citing Ex parte Frazier, 562 So.2d 560, 570 (Ala. 1989), and holding that ‘[Musgrove and Rogers] have proved neither that the cited testimony [from Dockery] was false nor that there is a significant possibility that, had the jury heard the truth, a different result would have been reached’), affd, 638 So.2d at 1363 n. 1; Rule 32.2(a)(4), Ala. R.Crim. P.
“28. Musgrove’s second claim is that Dockery lied about when he received the wallet recovered from Rogers. Mus-grove made a general, nonspecific allegation in his original Rule 32 petition and in his first amended Rule 32 petition that Dockery lied about when he received the wallet. (Original Petition on pp. 11-12; First Amended Petition on pp. 12-13) In his second amended Rule 32 petition, Musgrove claimed that he had ‘newly developed evidence’ that would show the wallet Dockery identified did not exist in 1965 when he claimed he received it.
“29. Musgrove filed a pre-hearing motion with this Court for permission to depose a representative of Buxton Leather Company, the manufacturer of the wallet identified by Dockery. The State objected and this Court denied Musgrove’s request in a written order. Despite this Court’s previous ruling, Russell Whiteford, president and CEO of Buxton, was permitted to testify at Musgrove’s evidentiary hearing. (E.R. 808-820) Whiteford stated that the wallet identified by Dockery and admitted into evidence was not manufactured by Buxton until the fall of 1970, some five years after Dockery said he received it. (E.R.813-814)
“30. Even considering Mr. White-ford’s testimony, this Court stands by its previous ruling. Evidence that the wallet Dockery said he received in 1965 as a high school graduation gift was not manufactured until some years later would not have proven Dockery was lying. Such testimony would have only been material or relevant to impeach Dock-ery’s testimony. The Court notes that Dockery not only testified about when *442 he received the wallet, but also identified its contents when it was recovered from Rogers. These items included an insurance card, a Red Cross card, a Selective Service Registration Card, a reduced copy of Dockery’s college diploma, and a check-cashing card, all of which contained Dockery’s name. This Court is convinced that, at the most, Whiteford’s testimony would have shown that Dockery was mistaken about when he received this specific wallet.
“31. This Court finds that this claim of prosecutorial misconduct is precluded from postconviction review because it fails to meet the pleading requirements of newly discovered evidence in Rule 32.1(e). Rule 32.2(a), Ala. R.Crim. P.”
(C. 56-59.)
In his brief to this Court, Musgrove disagrees with the circuit court’s findings on this claim. We agree with the circuit court that Whiteford’s testimony is not newly discovered evidence. Musgrove did not demonstrate when he learned of the evidence, and he did not demonstrate that the evidence amounted to anything more than impeachment.[15] Moreover, Musgrove has not shown that the circuit court abused its discretion in holding that the other evidence — e.g., the identifying cards and papers found in the wallet — demonstrated that the wallet in fact belonged to Dock-ery. Accordingly, Musgrove is not entitled to relief on this claim.
II.
Musgrove next asserts several claims alleging that the State failed “to disclose crucial exculpatory, mitigating and impeachment evidence” in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). (Musgrove’s brief, p. 79.) As noted above:
“[A]lthough [Musgrove] does not have to prove that his Brady claim is based on ‘newly discovered material facts’ as defined under Rule 32.1(e)(l)-(5), he must still plead facts indicating that his claim could not have been raised at trial or on direct appeal to avoid being procedurally barred under Rule 32.2(a)(3) and 32.3(a)(5). This requires [Musgrove] to plead that the State’s alleged [failure to disclose exculpatory, mitigating, or impeachment evidence] ‘was not known, and could not reasonably have been discovered, at trial or in time to raise the issue in a motion for new trial or on appeal.’ Pierce, 851 So.2d at 616. See also Hunt [v. State, 940 So.2d 1041 (Ala. Crim.App.2005)], Boyd v. State, 913 So.2d 1113 (Ala.Crim.App.2003), and Windsor v. State, 89 So.3d 805 (Ala. Crim.App.2009).”
McWhorter, 142 So.3d at 1258.
A.
In Part II.A. of his brief, Musgrove provides an overview of the claims presented in the remainder of Part II of his brief, and he cites various general propositions of law. We address each claim in the appropriate section below.
B.
Musgrove alleges that the State withheld information that Springer had a conviction in Kentucky for second-degree forgery.[16] In addressing this claim, the circuit court stated:
*443 “28. In an attempt to prove the State violated Brady in connection with Springer’s testimony, Musgrove also presented exhibits that, he claims, prove[] the State violated this Court’s discovery order and prove[] the prosecution and law enforcement committed misconduct. These exhibits include: 1) a copy of a conviction from Kentucky purportedly of Springer under the alias William Prince; 2) a letter dated June 1987 from the Bessemer District Attorney requesting the Kentucky conviction; 8) a copy of Springer’s rap-sheet from the Alabama Criminal Justice Information Center; 4) a case-action-summary of Springer’s escape charges; and 5) a case-action summary showing Springer was charged with promoting prison contraband, (Petitioner’s Exhibits 2, 3, 33, 36, and 37).
“24. After review, this Court finds that none of these exhibits meet all five requirements of newly discovered evidence under Rule 32.1(e); Ala. R.Crim. P. Judge Tommy Nail,[17] Walter Rogers’[s] defense counsel, specifically cross-examined Springer about an escape charge he had in Jefferson County Circuit Court that was nol-prossed and a promoting-prison-contraband charge Springer had pending in Bessemer Circuit Court. (R. 1175) Judge Nail also extensively cross-examined Springer about his prior felony convictions in Alabama. (R. 1182-1194; Defendant’s Exhibits 25-30) Any conviction Springer may have had from Kentucky under an alias would have been impeachment and would have been cumulative to the wealth of other impeachment evidence used by Judge Nail in cross-examination. Even if this Court were to conclude the State did not completely comply with this Court’s discovery order by not turning over the Kentucky conviction, there is no probability Musgrove was prejudiced in the light of the other Alabama felony convictions used by Judge Nail to impeach Springer. This Court also finds no prejudice in the light of the seven witnesses Judge Nail and Mr. Driskill[, Musgrove’s defense counsel,] called during the defense’s case-in-chief to impeach Springer. (R. 1671-1748)
“25. This Court finds that none of the exhibits offered in connection with Springer are material to Musgrove’s postconviction case. Alternatively, even if these exhibits were considered, none of them qualify as newly discovered evidence under Rule 32.1(e). The information in Musgrove’s exhibits was either known to Judge Nail and Mr. Driskill, was impeachment evidence, or was cumulative to other evidence presented at trial.”
(C. 52-56.)
As noted above in Part I.B. of this opinion, these exhibits indeed do not qualify as newly discovered evidence. As the circuit court held and as we have held above, Springer’s testimony was offered against Rogers, not Musgrove. Rogers’s counsel thoroughly cross-examined Springer on a wide range of issues, including numerous felony convictions, and seven witnesses were called to impeach Springer. Thus, even if the exhibits cited by Musgrove qualified as newly discovered evidence, Musgrove did not demonstrate that the evidence in those exhibits was material to his case. See Ex parte Kennedy, 472 So.2d 1106,1110 (Ala.1985). Furthermore, evidence that Springer had yet another felony conviction would not prove that Musgrove is innocent or that he did not *444 deserve the death penalty. See Rule 32.1(e)(5), Ala. R.Crim. P. Accordingly, the circuit court did not abuse its discretion in rejecting Musgrove’s Brady claim based on evidence indicating that Springer had a felony conviction in Kentucky.
C.
In Part II.D. of his brief, Musgrove asserts a Brady violation based on the State’s alleged failure to disclose that Dunlap interviewed Libby Barron and Jamie Crawford on the morning of the shooting. For the reasons discussed above in Part I.D.l. of this opinion, the circuit court properly denied this claim.
D.
In Part II.E. of his brief, Musgrove asserts a Brady violation based on the State’s alleged failure “to disclose that the cartridge shell casing recovered at the crime scene was replaced with one created by the State to match a casing purportedly found at the scene of a ‘pistol whipping’ alleged performed by Mr. Musgrove months earlier.” (Musgrove’s brief, p. 95.) In Part I.C. of this opinion, we held that the circuit court did not abuse its discretion in denying Musgrove relief on his claim that the State falsified evidence regarding the shell casings. Accordingly, his Brady claim based on those allegations was properly denied.
III.
Musgrove next challenges the consolidation of his case for trial with Rogers’s case. Specifically, Musgrove argues that he did not knowingly and voluntarily consent to the consolidated trial because, he says, the State committed various improprieties.
A.
1.
Musgrove alleges that, at the hearing on the joint motion to consolidate his and Rogers’s cases for trial, the prosecutor “represented that he intended to introduce testimony from [Musgrove’s daughter] Hickman ... and of her then husband, Ricky Sanford,” that Musgrove had confessed to them that he had participated in the murder. The prosecutor also represented that Springer would testify against Rogers.
According to Musgrove, Hickman did not testify at trial because, he says, she “refused to perjure herself.” (Musgrove’s brief, p. 96.) Musgrove asserts that “[absent the State’s improper manufacture of Ms. Hickman’s testimony, Mr. Musgrove would have recognized that if he was tried independently, he would not have to deal with any false confession evidence.” (Musgrove’s brief, p. 97.)
As noted above in Part I.B., Hickman testified to the grand jury that Musgrove had admitted to participating in the crime, but Hickman later recanted her grand-jury testimony and asserted that the State pressured her into testifying, provided her with details about the crime, promised to pay and paid her money, and told her that the pending criminal charges against her would be dropped. As also noted above, Musgrove conceded at the evidentiary hearing on his Rule 32 petition that Hickman’s testimony is not newly discovered evidence under Rule 32.1(e), Ala. R.Crim. P. (R. 441) (“[Musgrove’s counsel]: I repeat that it is not offered as newly discovered evidence.... [I]t was brought before Your Honor and it was discussed in connection with the motion for new trial.” (emphasis added)). At the sentencing hearing, Musgrove personally addressed the circuit court about Hickman’s alleged recantation of her grand-jury testimony. (Trial R. 2473.)
In denying this claim, the circuit court stated:
*445 “110. This Court notes the granting of Musgrove’s and Rogers’ motion to consolidate their cases for trial was extensively addressed on direct appeal.... The appellate courts’ review included the prosecutor’s statement of what he expected the evidence to show at trial which, the Court notes, occurred only after Musgrove and Rogers personally indicated to the Court they wanted their trial consolidated.
“111. This Court finds that the substantive allegation in Part II.E of Mus-grove’s second amended Rule 32 petition is procedurally barred from postconviction review because it could have been but was not raised at trial. Rule 32.2(a)(3)j Ala. R.Crim. P. The Court further finds the substantive allegation in Part II.E of Musgrove’s amended Rule 32 petition is procedurally barred from postconviction review because it could have been but was not raised on direct appeal. Rule 32.2(a)(5), Ala. R.Crim. P.”
(C. 99-100.)
Musgrove has not demonstrated that the circuit court abused its discretion in holding that this claim is procedurally barred[18] and without merit.
2.
Musgrove alleges that “information was not disclosed about the existence of Mr. Dockery and the theft of his car and wallet.” As noted above, Dockery’s testimony was presented by the State in rebuttal of Musgrove’s and Rogers’s joint alibi. Mus-grove cites no authority in support of the proposition that the State is obligated to disclose evidence it intends to offer to rebut a defendant’s alibi. The circuit court did not abuse its discretion in denying this claim.
3.
Musgrove asserts that he and Rogers “did not learn of Ms. Hickman’s recantation until after the Court ordered a joint trial ... and Mr. Dockery’s surprise rebuttal testimony was not revealed until trial.” (Musgrove’s brief, p. 99.) Therefore, he contends that the circuit court erred in holding that his claim based on the State’s alleged failure to disclose Hickman’s recantation was procedurally barred.
As to Hickman’s recantation, the premise of Musgrove’s claim is that Musgrove’s decision to seek a joint trial with Rogers was based on the State’s assertion that Hickman would testify against Musgrove. As the State notes, however, this premise is refuted by the record. Musgrove and Rogers requested a joint trial before the prosecutor set forth the evidence the State intended to offer against them. (C. 99-100.) As to Dockery’s testimony, Mus-grove cites no authority in support of the proposition that the State is obligated to disclose evidence it intends to offer to rebut a defendant’s alibi. The circuit court did not abuse its discretion in denying relief on these claims.
B.
Musgrove alleges that his “rights to due process and a fair trial were violated by being tried together with Mr. Rogers, who was charged with murder while serving a life sentence.” (Musgrove’s brief, p. 99.) He asserts that because he “and Mr. Rogers had a joint alibi defense ... the jurors were in effect told something they would not have known outside of a consolidated trial — that Mr. Musgrove associated with a *446 convict who had committed a crime sufficiently heinous to justify a life sentence.”
The circuit court found that this claim was procedurally barred under Rule 32.2(a)(3) and (5), Ala. R.Crim. P. Mus-grove does not address this finding and therefore has not demonstrated that the circuit court abused its discretion in denying this claim.
IV.
Musgrove asserts claims alleging that his trial and appellate counsel were ineffective. In Washington v. State, 95 So.3d 26 (Ala.Crim.App.2012), this Court stated: “To prevail on a claim of ineffective assistance of counsel the petitioner must show (1) that counsel’s performance was deficient and (2) that the petitioner was prejudiced by the deficient performance. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
“ ‘Judicial scrutiny of counsel’s performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel’s assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel’s defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action “might be considered sound trial strategy.” There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.’ “Strickland, 466 U.S. at 689.
“ ‘[T]he purpose of ineffectiveness review is not to grade counsel’s performance. See Strickland [v. Washington], [466 U.S. 668,] 104 S.Ct. [2052] at 2065 [(1984)]; see also White v. Singletary, 972 F.2d 1218, 1221 (11th Cir.1992) (“We are not interested in grading lawyers’ performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.”). We recognize that “[r]epresentation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another.” Strickland, 104 S.Ct. at 2067. Different lawyers have different gifts; this fact, as well as differing circumstances from case to case, means the range of what might be a reasonable approach at trial must be broad. To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or “what is prudent or appropriate, but only what is constitutionally compelled.” Burger v. Kemp, 483 U.S. 776, 107 S.Ct. 3114, 3126, 97 L.Ed.2d 638 (1987).’
“Chandler v. United States, 218 F.3d 1305, 1313-14 (11th Cir.2000). (footnotes omitted).
“An appellant is not entitled to ‘perfect representation.’ Denton v. State, 945 S.W.2d 793, 796 (Tenn.Crim.App. 1996). ‘[I]n considering claims of inef *447 fective assistance of counsel, “we address not what is prudent or appropriate, but only what is constitutionally compelled.” ’ Burger v. Kem/p, 483 U.S. 776, 794 (1987).”
Washington, 95 So.3d at 39-40.
Musgrove initially asserts that his retained counsel, Dwight Driskill, was suspended from practicing law in the 1990s for matters unrelated to Musgrove’s trial. The circuit court held that to the extent Musgrove’s assertion in that regard was an allegation of ineffective assistance of counsel, it was without merit. (C. 163-64.) Musgrove does not address this finding of the circuit court; thus, his assertion regarding DriskfU’s later suspension from the practice of law does not entitle him to relief.
A.
1.
Musgrove asserts that Driskill was ineffective in advising him to consent to a joint trial and in failing later to move to sever the cases for trial. (Musgrove’s brief, p. 106.) The circuit court addressed this claim in the following manner:
“145. During the evidentiary hearing, the following occurred:
“ ‘[RULE 32 COUNSEL]: Did you advise [Musgrove] to agree to the joint trial because you wanted to be able to rely on Judge Nail’s experience in capital cases?
“‘[MR. DRISKILL]: Well, I certainly did appreciate Mr. Nail’s experience and expertise in that area. I don’t specifically recall if I advised [Musgrove] of that fact or not but— “‘[RULE 32 COUNSEL]: Was that, though, in you own mind, a reason to do the cases together?
“ ‘[MR. DRISKILL]: I don’t know. I — like I said, I certainly felt like it would be beneficial to have two minds instead of one, so I guess it was a consideration.
“‘[RULE 32 COUNSEL]: Okay. Can you think of any advantage, other than possibly having Judge Nail there, Tommy Nail, a defense lawyer at the time — he obviously wasn’t a judge at the time — can you think of any advantage to Mr. Musgrove, other than that, of trying the cases together?
“‘[MR. DRISKILL]: Other than that, no.’
“(E.R.707-708)
“146. Musgrove and Rogers were charged with the same capital murder, they were captured together after a high-speed chase with law enforcement, and their alibi defenses were the same— that they were in Florida visiting relatives of Musgrove’s at the time of the murder. Given the underlying facts of Musgrove’s and Rogers’ cases, and the demands of defending a capital defendant, having two minds instead of one as Mr. Driskill said was not an unreasonable trial strategy. This Court observed nothing during any of the pre-trial, trial, or posttrial proceedings that would cause any reasonable person to believe Mr. Driskill was reliant on Judge Nail to defend Musgrove.
“147. Before their trial, this Court held an extensive colloquy with Mus-grove and Rogers about joining their cases for trial. (R. 270-280) After Mus-grove and Rogers had moved to consolidate their cases for trial, the.prosecutor expressed his concerns about the consolidation, including the following:
“ T would ask the court to further inquire of these two defendants if they know what they are doing, and I know that the two defense attorneys certainly would not try to put reversible *448 error into the record, but I don’t want to see a situation like that created where if convictions are gained against either or both of these defendants somewhere down the road they come back in front of an appellate court and say either we did not understand what we were doing or we received bad advice from our attorneys, that they didn’t know what they were doing. They advised us to do this. I want to make dead clear certain on the record that none of that occurs if these men are sent forth forward to the electric chair.’
“(R. 276) After listening to the prosecutor’s concerns, Musgrove and Rogers again specifically indicated to this Court they wanted their cases consolidated for trial. (R. 279) Further, in Musgrove’s and Rogers’ consolidated direct appeal, they argued the consolidation of their cases denied them a fair trial. In a detailed analysis, the Alabama Court of Criminal Appeals concluded that:
“ ‘In the present case, the defendants moved to have their cases consolidated, despite the prosecutor’s statements of concern. However, they were given ample opportunity to be heard and were clearly informed of the possible repercussions. They were properly joined pursuant to Rule 15.4(a) because they were alleged to have participated in the same offense, pursuant to a common scheme.
“ ‘The appellants never moved for severance. Both appellants raised the same alibi defense, relying on the same alibi witnesses and testimony, and both effectively attacked the validity and propriety of their identifications by the victim’s wife in a pretrial lineup.
“ ‘In the present case, the defendants were clearly informed of the possible repercussions of the consolidation of their cases and, with this knowledge, they decided to pursue their motion to consolidate.’
“Musgrove v. State, 630 So.2d 78, 84[] (Ala.Crim.App.1991).
“148. Musgrove repeatedly told this Court he understood the pros and cons of consolidating his and Rogers’[s] cases for trial. (R. 271, 279) At the evidentia-ry hearing, Mr. Driskill testified that he did not recall Musgrove ever expressing concern after the cases were consolidated nor did he recall Musgrove asking any questions after this Court explained the possible consequences of consolidation. (E.R.709) Further, Musgrove did not testify at the evidentiary hearing, so there is no evidence before this Court proving he was misled or did not understand the consequences of a joint trial with Rogers. This Court will not find Mr. Driskill ineffective for pursuing a reasonable trial strategy, especially when Musgrove knowingly and voluntarily agreed with it.
“149. This Court finds that Mus-grove failed to meet his burden of proving by a preponderance of evidence Driskill’s performance was deficient and caused Musgrove to be prejudiced. Rule 32.3, Ala. R.Crim. P.”
(C. 114-18.)
Musgrove asserts that the circuit court’s “eonclusory statement that a joint trial was a ‘reasonable trial strategy’ ... is without support and is contradicted by the evidence of record.” (Musgrove’s brief, p. 109.) Musgrove contends “that the only benefits of consolidation were Mr. Rogers’s; there was no benefit to a joint trial for Mr. Musgrove.” (Musgrove’s brief, p. 107.) We disagree.
In evaluating the decision to seek a joint trial, we start with the presumption that it *449 was a reasonable trial strategy. As noted in Strickland:
“Judicial scrutiny of counsel’s performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel’s assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel’s defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action ‘might be considered sound trial strategy.’ There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.”
Strickland, 466 U.S. at 689.
The evidence revealed that Musgrove and Rogers had been apprehended together approximately two months after the murder. The Alabama Supreme Court’s opinion in Rogers v. State includes the following description of the circumstances surrounding their arrest:
“The state’s evidence showed that a state trooper, noticing a vehicle with only a ‘dealer’s display tag’ travelling in front of him, pulled alongside the vehicle, observed the driver and the passenger, and then signalled the driver to stop. The defendants sped away, with the state trooper in pursuit; he pursued them for approximately 30 miles, with the vehicles reaching speeds in excess of 100 miles per hour. According to the state trooper, during the chase the windows that had been previously rolled up had been rolled down; the passenger, holding what appeared to be a large handgun, moved to the rear seat of the vehicle and repeatedly fired the handgun at him. The automobile chase ended with the defendants’ vehicle mired in mud in a pasture; the defendants fled on foot. Within minutes, 20-30 law enforcement officers arrived on the scene, walked to the vehicle, looked inside it, and saw two boxes of ammunition (.44 magnum and .357 magnum) on the floorboard. Thereafter, the officers searched the area, found the defendants, and took them into custody. An inventory of the contents of the vehicle produced a 9-millimeter semi-automatic pistol and a .25 caliber semi-automatic pistol in a metal ammunition box from the trunk of the vehicle; two empty 18-round clips for the 9-millimeter pistol; two partially filled boxes of ammunition (one box contained fourteen .44 caliber magnum bullets and one contained thirty-nine .357 caliber magnum bullets). When the inventory was conducted, three projectiles (or the portions of bullets known as bullet jackets) were removed from the right rear taillight assembly of the vehicle. Testimony established that the inside of the rear of the vehicle contained three marks, each approximately two inches long and a quarter inch wide, all within a 10-12 inch circumference, slightly off center, and located behind the right passenger side of the vehicle on the same side where the bullet jackets were recovered from the taillight area; and that ‘shiverous material’ (pieces of lead smaller than bullets, or shivers) was *450 found inside the vehicle. The Alabama Department of Forensic Sciences determined that the three bullet jackets recovered from the vehicle had been fired from the same barrel, but that the bullet that killed the victim had been fired from a different barrel. Further testimony established that the vehicle in which the defendants were travelling had been stolen; that both defendants were escapees from state work release programs (Musgrove had escaped in June 1986-approximately five months before the chase; Rogers had escaped in August 1986-approximately three months before the chase); and that around September 29, 1986 (approximately two months before the chase), the defendants had become named suspects in the capital murder case.”[19]
630 So.2d at 89. Additionally, as the circuit court noted, Musgrove and Rogers relied on a common alibi defense — i. e., that they had been in Florida at the time of the murder. It was not unreasonable for Dris-kill to recommend that Musgrove’s trial be consolidated for trial with Rogers’s case, given that their cases were so intertwined, particularly in their assertion of a common alibi defense.[20] Under the particular circumstances of this case, the circuit court correctly determined that the Driskill did not provide ineffective assistance of counsel. Moreover, as the above-quoted portions of the record make clear, the prosecutor and the trial court went to great lengths to ensure that Musgrove was fully informed of the ramifications of the decision to consolidate his case with Rogers’s for trial. Accordingly, Musgrove is not entitled to relief on this claim.
2.
Musgrove asserts that “Driskill failed to make a reasonable investigation of Mr. Musgrove’s lines of defense, including failing to investigate and cross-examine key witnesses.” (Musgrove’s brief, p. 110.) In addressing this claim, the circuit court stated:
“155. The only prosecution witness Musgrove called at his evidentiary hearing was Jamie Crawford. (E.R.538-553) Crawford was at the Barron home when the murder took place. Nothing was elicited from Crawford at the evidentia-ry hearing that would have discredited his trial testimony or the trial testimony of any other state witness.
“156. This Court finds that Mus-grove failed to prove by a preponderance of evidence Driskill’s performance in cross-examining state witnesses was deficient and cause[d] him to be prejudiced. Rule 32.3, Ala. R.Crim. P.”[21]
(C. 121.) Further, Musgrove alleges:
“Mr. Driskill did not ask the State’s only identification witness, Mrs. Barron, *451 its chief investigator, Sergeant Brooks, or its only alibi-rebuttal witness, Mr. Dockery, a single question (Trial R. 89-90,179-80,1481,1972); failed to or inadequately cross-examined other critical state witnesses {e.g., Trial R. 1061, 1151, 1181); failed to object to damaging and inadmissible evidence {e.g., see Mus-grove, 688 So.2d at 1349, 1350, 1351, 1352, affd, 638 So.2d at 1364, 1365, 1366); and made only a superficial and essentially indifferent closing argument and argument on motion for new trial that lasted but a few minutes (Trial R. 2145-56, 2678). Trial counsel left these tasks to counsel for Mr. Rogers, despite the many differing interests of the two defendants.”
(C. 111.) The circuit court addressed these allegations as follows:
“158. According to Judge Nail, he and Mr. Driskill often discussed their clients’ cases and made numerous trips to see Rogers and Musgrove while they were in custody. (E.R.669-671) Judge Nail testified that Mr. Driskill did as much as he did to investigate and prepare the case for trial and he did not think that Mr. Driskill depended on him to defend Musgrove. (E.R.674)
“159. Musgrove failed to proffer in his second amended Rule 32 petition or at the evidentiary hearing what Mr. Driskill could have said in his opening statements or closing arguments that would have been so compelling it would have caused a different result at trial. Musgrove also failed to proffer in his second amended Rule 32 petition or at the evidentiary hearing a single question Mr. Driskill could have asked Libby Barron on cross-examination that would have further impeached or otherwise discredited her testimony. Further, Musgrove failed to identify in his second Rule 32 amended petition any of the State’s other ‘critical witnesses’ Mr. Driskill inadequately cross-examined nor does he proffer in his second amended petition or at his evidentiary hearing what questions Mr. Driskill should have asked.
“160. Finally, Musgrove failed to identify in his second amended Rule 32 petition a single item of ‘damaging and inadmissible evidence’ Mr. Driskill should have objected to. At the eviden-tiary hearing, Musgrove did elicit from Mr. Driskill that he would not have stipulated to the results of the October 1, 1986, lineup if he did not think it occurred. (H.R.697) Mr. Driskill stated he did not remember testimony about the photo lineup. As indicated elsewhere in this order, however, Musgrove failed to affirmatively prove that Howard Brooks, in fact, lied about conducting the October 1, 1986, photo lineup with Libby Barron.
“161. This Court finds that Mus-grove failed to carry his burden of proving any of the claims of ineffective assistance of counsel in paragraph 106(d) by a preponderance of evidence. Rule 32.3, Ala. R.Crim. P.”
(C. 122-23.) Musgrove has not demonstrated that the circuit court erred in holding that he failed to prove these allegations of ineffective assistance of counsel.
3.
Musgrove alleges that “Driskill failed adequately to investigate and uncover mitigation evidence critical to Mr. Musgrove’s penalty phase defense.” (Musgrove’s brief, p. 113.) The circuit court found that *452 Musgrove knowingly and voluntarily waived his right to testify at the penalty phase and to have Driskill present mitigating evidence. (C. 137-43.) The circuit court also found, in the alternative, that Musgrove had abandoned this claim and, by presenting no evidence in support of this claim at the hearing, had failed to affirmatively prove this claim.
Musgrove does not address either of these alternative rulings. Accordingly, he has not demonstrated that he is entitled to relief on this claim. See, e.g., Adkins v. State, 930 So.2d 524, 539-40 (Ala.Crim. App.2001) (“We join the majority of jurisdictions that have considered this issue and hold that a defendant is estopped from raising a claim of ineffective assistance of counsel for counsel’s failure to present mitigating evidence when the defendant waived the presentation of mitigating evidence.”).
4.
Musgrove asserts that “Driskill failed adequately to object to the improper arguments, misleading statements, and other misconduct of the prosecution throughout the trial.” (Musgrove’s brief, p. 115.). This conclusory assertion cites only other parts of Musgrove’s brief and fails to comply with Rule 28(a)(10), Ala. R.App. P. See McNabb v. State, 991 So.2d 313, 317 (Ala.Crim.App.2007) (“It is not the job of the appellate courts to do a party’s legal research. .. .Nor is it the function of the appellate courts to ‘make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.’ ” Pilen Indus., Inc. v. Consolidated Indus., Inc., 740 So.2d 1108, 1110 (Ala. Civ.App.1999) (citations omitted)). Mus-grove is not entitled to relief on this claim.
5.
In Part IV.A.5. of his brief, Mus-grove asserts 11 alleged failures of Driskill that, Musgrove contends, constituted ineffective assistance of counsel. For 10 of those allegations, Musgrove cites no authority. For the remaining allegation in this section — i.e., that Driskill was ineffective for failing to secure transcriptions of bench conferences during the trial — Mus-grove cites a general proposition of law that does not establish that he is entitled to relief. (Musgrove’s brief, p. 116 & n. 25.) Consequently, Musgrove has not demonstrated that he is entitled to relief on any of these allegations. Rule 28(a)(10), Ala. R.App. P. See McNabb, supra.
6.
Musgrove alleges that “[t]o the extent [Musgrove’s] evidence and arguments are procedurally barred, such procedural bar is the result of ineffective assistance of counsel.” (Musgrove’s brief, p. 117.) This claim is not supported by citations to the record or to legal authority. Rule 28(a)(10), Ala. R.App. P.; McNabb, supra.
Musgrove also asserts that “[t]he cumulative effect of Mr. Driskill’s errors denied [Musgrove] the effective assistance of counsel.” (Musgrove’s brief, p. 118.) Musgrove is not entitled to relief on this claim. See, e.g., Brooks v. State, 929 So.2d 491, 514 (Ala.Crim.App.2005) (“We can find no case where Alabama appellate courts have applied the cumulative-effect analysis to claims of ineffective assistance of counsel.”).
B.
Musgrove asserts that he was denied the effective assistance of counsel by Fred Pickard, who represented Musgrove before Driskill did. Pickard represented Musgrove at the time of the pretrial photographic lineups when Libby Barron identi- *453 fled Musgrove. Musgrove asserts that Pickard was ineffective because Pickard “did not stop Sergeant Howard Brooks from taking Mrs. Barron into a different room, without counsel present, and carrying a brief case that contained recently taken photographs of Mr. Musgrove and Mr. Rogers.” (Musgrove’s brief, p. 118.)
The circuit court held that this claim was procedurally barred because Pickard had testified during the guilt phase of Musgrove’s trial during the defense’s case and that “testimony establishes that the facts underlying Musgrove’s allegations of ineffective assistance of counsel against Pickard were known to Musgrove during the trial.” (C. 112.) Alternatively, the circuit court held that Musgrove had presented no evidence indicating that he had ever requested an attorney at the pretrial lineup, and the circuit court further held that Musgrove was not entitled to counsel (and thereby not entitled to effective assistance) at the pretrial lineup. Finally, the circuit court alternatively held that Mus-grove had failed to prove by a preponderance of the evidence that Pickard’s performance was deficient and prejudiced him. (C. 113-14.)
Musgrove has not demonstrated that he is entitled to relief on this claim. The sole authority on which Musgrove relies — a concurring opinion by Justice Alito in Ro-thgery v. Gillespie County, Texas, 554 U.S. 191, 128 S.Ct. 2578, 171 L.Ed.2d 366 (2008) — does not establish that Musgrove was entitled to counsel, much less effective assistance of counsel, at the pre-indictment, pretrial photographic lineup in this case. Cfi Vanpelt v. State, 74 So.3d 32, 75 (Ala.Crim.App.2009) (noting that critical stages of the proceedings against the defendant, at which the Sixth Amendment right to counsel applies, may include post-indictment lineups). Moreover, other than making the bare assertion that Driskill was ineffective for failing to raise the claim, Musgrove does not address the circuit court’s alternative holding that this claim is procedurally barred.
C.
Musgrove asserts that “the cumulative impact of counsels’ errors deprived Mr. Musgrove of effective assistance of counsel.” (Musgrove’s brief, p. 120.) Mus-grove is not entitled to relief on this claim. See, e.g., Brooks, 929 So.2d at 514 (“We can find no case where Alabama appellate courts have applied the cumulative-effect analysis to claims of ineffective assistance of counsel.”).
D.
Musgrove asserts that he was “denied effective assistance of counsel at trial and on appeal by the insufficient funding provided by the State of Alabama for the compensation of capital defense attorneys and for their expenses, including funds for experts.” (Musgrove’s brief, p. 122.) This claim is without merit. The circuit court’s order notes that Driskill was retained, not appointed, and that Musgrove did not ask Driskill a single question about any expert that would have persuaded the circuit court to grant a motion for extraordinary funds. (C. 164-67.)
V.
In Part V of his brief to this Court, Musgrove asserts the following claims:
— The prosecutor made improper arguments to the jury regarding Springer’s testimony and the circuit court erroneously failed to instruct the jury (Part V.A.);
— The prosecutor, during the guilt phase, improperly commented on Musgrove’s decision not to testify (Part V.B.);
*454 — During the guilt-phase closing argument, the prosecutors improperly argued that key defense witnesses lied and that defense counsel suborned their perjury (Part V.C.);
— During the closing argument of the penalty phase, the prosecutor improperly suggested that in his opinion Musgrove was especially deserving of death (Part V.D.);
— During Musgrove’s case, the prosecutor had improper contact with the husband of one of the jurors (Part V.E.);
— The members of the sequestered jury were improperly permitted to have contact with members of their family before rendering their verdict (Part V.E.);
— The evidence of Musgrove’s flight was improper (Part V.F.);
— The trial court failed to properly instruct the jury regarding lesser-included charges and accomplice liability (Part V.G.); and
— The consolidation of Musgrove’s ease with Rogers’s case for trial was improper (Part V.H.).
The circuit court held that all these claims were procedurally barred under specific provisions of Rule 32.2(a), Ala. R.Crim. P. Musgrove does not address that holding, which was not erroneous. See, e.g., State v. Taroer, 629 So.2d 14, 19 (Ala.Crim.App.1993) (holding that “[t]he procedural bars of Rule 32 apply with equal force to all eases, including those in which the death penalty has been imposed”).
VI.
Musgrove asserts that his death sentence violates Ring v. Arizona, 536 U.S. 584, 591-92, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). Musgrove did not plead this claim in his second amended Rule 32 petition or argue the claim at the Rule 32 hearing. Consequently, it is not properly before this Court. See, e.g., Morrison v. State, 551 So.2d 435, 437 (Ala. Crim.App.1989) (“A petitioner for post-conviction relief may not raise on appeal grounds not presented in the petition or presented at the hearing on the petition.”).
Moreover, the jury unanimously convicted Musgrove of murdering Barron during the course of a burglary. Its verdict in the guilt phase established beyond a reasonable doubt the existence of the aggravating circumstances that the murders occurred during the course of a burglary. There was no Ring violation in this case. See Ex parte Waldrop, 859 So.2d 1181 (Ala.2002).
VII.
Musgrove alleges that “the death penalty, including Alabama’s methods of execution (electrocution and lethal injection ...), violates the Eighth Amendment’s prohibition against ‘unnecessary and wanton infliction of pain.’ ” (Mus-grove’s brief, p. 138) (quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)). Musgrove did not plead this claim in his second amended Rule 32 petition or argue the claim at the Rule 32 hearing. Consequently, it is not properly before this Court. See, e.g., Morrison v. State, 551 So.2d 435, 437 (Ala. Crim.App.1989) (“A petitioner for post-conviction relief may not raise on appeal grounds not presented in the petition or presented at the hearing on the petition.”).
This Court has held that this claim is procedurally barred in a postconviction proceeding because it could have been raised at trial or on appeal but was not. See, e.g., Lee v. State, 44 So.3d 1145 (Ala. Crim.App.2009); Boyd v. State, 913 So.2d *455 1113 (Ala.Crim.App.2003); Davis v. State, 720 So.2d 1006 (Ala.Crim.App.1998).
Moreover, the Alabama Supreme Court in Ex parte Belisle, 11 So.3d 323 (Ala. 2008), held that Alabama’s procedure for lethal injection is constitutional. Thus, this claim has been determined adversely to Musgrove.
VIII.
In Part VIII of his brief, Musgrove makes a general allegation that the claims in his petition are not procedurally barred. (Musgrove’s brief, p. 140.) Musgrove appears to argue that because the circuit court denied the State’s motion to summarily dismiss the second amended Rule 32 petition, the circuit court could not hold that any claim in the petition is procedurally barred. To the extent Musgrove is making that argument, it is without merit. See, e.g., Ex parte Pierce, 851 So.2d 606, 616-17 (Ala.2000) (recognizing that claims in a postconviction petition may be held to be procedurally barred following an evi-dentiary hearing).
Musgrove also contends that the circuit court’s “finding ... that some of the claims ... were time-barred was in error.” (Musgrove’s brief, p. 141.) Musgrove, however, fails to identify any specific claim that was dismissed as time-barred.
Musgrove argues that the circuit court erred in requiring Musgrove to prove that, as to his Brady claims, the facts supporting his claims were not known and could not reasonably have been discovered at trial or in time to raise the issue in a motion for a new trial or on appeal. As discussed above, however, Musgrove’s argument in that regard is without merit.
Musgrove next alleges that the circuit court did not consider all his “ineffective assistance of counsel claims and supporting evidence.” (Musgrove’s brief, p. 143.) The only specific assertion he makes in this regard is his assertion that the circuit court “barr[ed] evidence regarding Mr. Driskill’s ineffective assistance concerning the consolidation decision.” (Musgrove’s brief, p. 143.) Musgrove does not explain what specific evidence the circuit court allegedly excluded. This argument is without merit.
Finally, Musgrove reasserts claims that both Pickard and Driskill rendered ineffective assistance of counsel. We have already addressed those claims in Part IV of this opinion.
IX.
Musgrove alleges he “was denied a fair Rule 32 hearing.” (Musgrove’s brief, p. 145.)
A.
Musgrove alleges that the circuit court “improperly denied Mr. Musgrove the ability to interview the jurors during the Rule 32 process.” (Musgrove’s brief, p. 145.) Musgrove asserts in his brief to this Court that interviews with jurors were necessary to determine whether the jurors “may have improperly relied upon prayer or extraneous information in reaching their verdict and may also have been heavily influenced by improper flight evidence.” (Musgrove’s brief, p. 146.)
In his second amended Rule 32 petition, however, Musgrove did not plead a claim alleging that the jurors relied upon prayer or extraneous information in reaching their verdict or that the jurors were influenced by improper evidence of flight. This claim, therefore, is not properly before this Court. Morrison, supra.
In this section of his brief, Musgrove also reasserts allegations that during his case, the prosecutor had improper contact with the husband of one of the jurors and that members of the sequestered jury *456 were improperly permitted to have contact with members of their families before rendering their verdict. As noted in Part V of this opinion, the circuit court held that these claims were procedurally barred under Rule 32.2(a), Ala. R.Crim. P., and Mus-grove does not address that holding, which was not erroneous.
B.
Musgrove alleges that the circuit court “refused to accept proffers of the evidence that it was excluding and ordered them ‘sealed.’ ” (Musgrove’s brief, p. 149.) As Musgrove notes, however, the circuit court later ruled that the proffered evidence be sealed and available for this Court on appeal.
The evidence to which Musgrove is referring includes the following:
— Testimony from Nail about the circumstances relating to the consolidated trial;
— Testimony from Sherri Allen, as discussed above in Part I.C.3.;
— A transcript of an interview with Libby Barron’s uncle, Mr. Lowe, about conversations he had with Libby about her identification of Mus-grove; and
— An affidavit from Myra Rogers about what she allegedly heard Libby say about the identification of Mus-grove.
(Musgrove’s brief, pp. 150-51.)
We note that all the above-listed evidence related to claims that the circuit court held are procedurally barred under Rule 32.2(a), Ala. R.Crim. P., and this Court in this opinion has affirmed the circuit court’s holding that those claims are procedurally barred. Musgrove has not demonstrated that any of the evidence listed above meets the definition of newly discovered evidence under Rule 32.1(e), Ala. R.Crim. P. Musgrove has not demonstrated that the circuit court abused its discretion in excluding the above-listed evidence.
C.
Musgrove alleges that the circuit court erred in allowing Sherri Allen to invoke her Fifth Amendment right not to testify. Any error in this regard would be harmless, however, because Musgrove proffered affidavits from Allen, and Mus-grove does not allege that Allen’s testimony would have differed in any material respect from those affidavits. Thus, the circuit court had before it the substance of what Allen’s testimony would have been. Moreover, as we have noted above, Mus-grove did not demonstrate that Allen’s testimony would meet the definition of newly discovered evidence in Rule 32.1(e), Ala. R.Crim. P.
D.
Finally, Musgrove asserts that “Judge Garrett exhibited improper bias against [Musgrove].” (Musgrove’s brief, p. 156.) In this section of his brief, Mus-grove merely sets forth a list of conclusory statements that, he argues, demonstrates Judge Garrett’s alleged bias. Musgrove does not support these statements with any legal argument or citation to authority. Accordingly, Musgrove has not demonstrated he is entitled to relief on this claim. Rule 28(a)(10), Ala. R.App. P.; see McNabb, 991 So.2d at 317.

Conclusion

The judgment of the circuit court denying Musgrove’s Rule 32 petition is affirmed.
AFFIRMED.
WINDOM, P.J., and WELCH, KELLUM, and BURKE, JJ., concur.

. This case was originally assigned to another member of this Court; it was reassigned to Judge Joiner on March 1, 2011.

. In its answer to the second amended Rule 32 petition, the State asserted, among other things, that Musgrove’s claims were precluded by the various grounds of preclusion under Rule 32.2(a), Ala. R.Crim. P.

. "C.” refers to the clerk's record in the Rule 32 proceedings; "R." refers to the reporter’s transcript in the Rule 32 proceedings; "Trial C.” refers to the clerk’s record in Musgrove's direct appeal; "Trial R.” refers to the reporter’s transcript in the direct appeal. See Rule 28(g), Ala. R.App. P.

. Musgrove’s daughter’s first name is Tande-lyn, not Tamara. At the time of the evidentia-ry hearing on the Rule 32 petition, Tandelyn’s last name was Hickman, but at the time of Musgrove’s trial her last name was Sanford. Neither Hickman nor Ricky Sanford testified at Musgrove’s trial.

. At the evidentiary hearing Musgrove proffered an affidavit from Springer outlining in detail what his testimony would have been. (Supp. C. 301; R. 363.)

. The circuit judge further stated that he was "familiar with Billy Don Springer” and that, based on Springer's "long criminal career that includes numerous felony convictions involving moral turpitude .... [a]ny testimony from Springer in 2006 that he perjured himself in 1988 would have been, to say the very least, highly suspect.” (C. 54.) Although Musgrove contends that this statement by Judge Garrett was improper, our caselaw recognizes that if the judge presiding over the Rule 32 petition is the same judge who presided over the petitioner's trial, the judge may use his personal knowledge of the facts underlying the claim to deny that claim if the judge "states the reasons for the denial in a written order.” Sheatsv. State, 556 So.2d 1094, 1095 (Ala.Crim.App. 1989).

. Indeed, the prosecutor, in the above-quoted portion of the trial, warned that Musgrove would later attempt to invalidate his conviction and sentence by alleging that the consolidation was erroneous.

. Musgrove also alleges in this part of his brief that evidence from his trial corroborates Springer’s assertion in his recantation that the State — and not Rogers — provided him with the information regarding the caliber of the weapons used in the crime; specifically, Musgrove cites Springer’s handwritten statement dated April 16, 1987, and his tape-recorded statement made on April 20, 1987. In the April 16, 1987, statement, Springer does not mention the caliber of the weapons, but he does mention the caliber of the weapons in his later statement. Musgrove did not raise these arguments in the circuit court; consequently, they are not properly before this Court. See, e.g., Morrison v. State, 551 So.2d 435, 437 (Ala.Crim.App.1989). Moreover, Musgrove does not assert that these arguments are based on newly discovered evidence.

. Musgrove also cites that part of Springer’s affidavit indicating that the State released Springer from custody "within a few weeks” after he had testified at the trial — according to Musgrove's brief, Springer was released in February 1988, several months before the hearing on Musgrove’s motion for a new trial. (Musgrove’s brief, p. 23 n. 5.) This allegation, even if it were relevant to Musgrove's case, does not meet the definition of newly discovered evidence in Rule 32.1(e), Ala. R.Crim. P.

. Musgrove asserts on appeal that the circuit court "ignored” Hickman's testimony. (Mus-grove’s brief, p. 33.) As noted, however, the circuit court considered the testimony but found it "completely unworthy of belief.”

. Musgrove also contends that the circuit court "completely ignore[d]” testimony from Kayfetz that the barrel of the shell casing in the crime-scene photo (State’s Exhibit 23) is "pitted” but the barrel of the casing introduced at trial is not. (Musgrove's brief, p. 52.) Kayfetz based his conclusion regarding "pitting” on the fact that there is not a clear line of reflection of light down the casing in the crime-scene photograph (State's Exhibit 23). According to Kayfetz, "surface pitting” on the casing in the photograph in State's Exhibit 23 was the cause of the diffusion of the line of reflection. Kayfetz testified that the separate photograph he took of the cartridge introduced into evidence at trial (State's Exhibit 32) did have a clear line of reflection.
We agree with the State’s assertion on appeal that "[sjimply because the Rule 32 court did not specifically mention one aspect of Mr. Kayfetz's testimony” does not mean that the circuit court ignored it. (State’s brief, p. 73.) As noted, the circuit court specifically found that there appeared to be differences in the lighting among the photographs Kayfetz took as well as in the photograph of the shell casing in State's Exhibit 22. Although the circuit court did not specifically mention Kay-fetz's testimony about "pitting,” the circuit court did make findings regarding the differences in lighting in the various photographs and their effect on the reflectivity on the various shell casings. The circuit court noted that
"[i]n photography, small differences in lighting, angles, and equipment can make a huge difference. It is also very important that the final prints be made on the same brand and grade of paper as the original print, with the same processing time and photo chemistry. Small differences in photo processing can make large differences in the final print.”
The circuit court's statements in this regard were consistent with Kayfetz's testimony. For example, Kayfetz testified extensively about the type of equipment he used in taking the photographs, i.e., that it was the same or substantially similar to that used to take photographs at the original crime scene. Kayfetz also testified about the lighting equipment he used and how he determined where to place it in an attempt to create lighting similar to that in the original crime scene.

. Allen’s first name also appears in the record as "Cherry.” (R. 526.)

. Musgrove also cites an affidavit from Myra Rogers, a neighbor of Libby’s, which asserts that Libby said she never saw the killers and that she was told to pick Musgrove and Rogers. The circuit court excluded this affidavit. Musgrove makes a bare assertion that this ruling was error but cites no authority other than miscellaneous provisions of the Alabama Rules of Evidence. (Musgrove’s brief, p. 63 n. 19.) Rogers was deceased at the time of the evidentiary hearing. Musgrove fails to demonstrate that the circuit court abused its discretion in excluding her affidavit. See Hunt v. State, 940 So.2d 1041, 1050 (Ala.Crim.App. 2005) ("Rule 32.9(a), Ala. R.Crim. P., is discretionary, not mandatory and leaves the question of the admission of evidence by affidavits to the discretion of the trial court.”).

. Initially, we note that in his second amended Rule 32 petition, Musgrove presented this claim as one alleging both newly discovered evidence and that his counsel was ineffective for not retaining an expert on the reliability of identification testimony. (C. 614.) In Part IV, we address the ineffective-assistance-of-counsel aspect of this claim.

. Musgrove asserts that Whiteford’s testimony went “to the probity of Mr. Dockery’s testimony and not just to his credibility.” (Musgrove's brief, p. 79.) This is a distinction without a difference. "[Pjrobity means 'honesty; integrity.' ” Bryan A. Garner, A Dictionary of Modem Legal Usage 695 (2d ed.1995).

. Parts II.B.-C. in Musgrove’s brief to this Court.

. Judge Tommy Nail was Rogers’s defense counsel. At the time of the evidentiary hearing on Musgrove’s Rule 32 petition, Nail had become a circuit judge.

. In Part III.A.3. below, we address in more detail the circuit court's holding that this claim is procedurally barred.

. On appeal, the Alabama Supreme Court held that the admission of this evidence was proper.

. Musgrove characterizes the State's evidence rebutting that common alibi defense as a "surprise” that "was not revealed until trial”; this characterization implicitly recognizes one of the advantages to Musgrove of having his case tried at the same time as Rogers's. Had Rogers been tried first, the State would have learned the details of Rogers's alibi defense and presumably would have been better prepared to rebut that defense once Musgrove’s case proceeded to trial. Of course, it is speculation that the State would have tried Rogers first, but if the case against Rogers indeed was a stronger one — a point that Musgrove repeatedly suggests to this Court — that speculation is reasonable.

.As the circuit court noted, Musgrove’s claims that Driskill was ineffective for failing to investigate, discover, and call witnesses such as Dunlap, Myra Rogers, and Allen, is inconsistent with his claims that those witnesses’ testimony could not have been discovered in time to file a motion for a new trial *451 and therefore meet the definition of newly discovered evidence. Cf. Rule 32.1(e)(1), Ala. R.Crim. P.